**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CONGRESS MATERIALS, LLC and | § | Case No. _____ |
| CONGRESS SAND & GRAVEL, LLC | § | Jointly Administered |
| | § | |
| Debtors. | § | |

**INTERIM ORDER (1) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING, GRANTING SENIOR SECURITY INTERESTS AND ACCORDING PRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO SECTION 364(c) AND 364(d) OF THE BANKRUPTCY CODE, (2) AUTHORIZING THE USE OF CASH COLLATERAL (3) GRANTING ADEQUATE PROTECTION, (4) MODIFYING THE AUTOMATIC STAY, AND (5) APPROVING FORM AND MANNER OF NOTICE AND SCHEDULING A FINAL HEARING UNDER BANKRUPTCY RULE 4001(c)**

This matter came before the Court on motion dated _____ ___, 2010 (the "Motion") [Docket No. ____] of Congress Materials, LLC (as successor by merger to Green Aggregates, Inc. ("Green")) ("Congress Materials"), and Congress Sand & Gravel, LLC ("Congress Sand") debtors and debtors-in-possession in the above numbered cases (collectively, the "Debtors") requesting, *inter alia,* entry of an order:

(i)     authorizing the Debtors, pursuant to Sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to obtain post-petition loans, advances and other financial accommodations on an interim basis from Presidential Financial Corporation ("Presidential"), in accordance with the DIP Loan Agreement and this Interim Order (as hereinafter defined) and secured by security interests in and liens upon all of the Collateral (as hereinafter defined);

(ii)     authorizing the Debtors to enter into the Debtor-in-Possession Loan and Security Agreement (the "DIP Loan Agreement") (capitalized terms not otherwise defined in this Interim Order shall have the respective meanings ascribed thereto in the DIP Loan Agreement);

(iii)    affording adequate protection to Presidential;

(iv)    modifying the automatic stay to the limited extent hereinafter set forth;

(v)     approving form and manner of notice and scheduling a final hearing pursuant to Bankruptcy Rule 4001(c); and

(vi)    granting to Presidential superpriority administrative claim status and liens pursuant to Sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code.

**BASED UPON THE STIPULATIONS OF THE PARTIES, AND THE EVIDENCE PRESENTED, THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A.      On October 27, 2010 (the "Petition Date"), the Debtors filed their voluntary petitions (these "Cases") under chapter 11 of the Bankruptcy Code.  The Debtors are currently operating their businesses and managing their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner and no official committee has been appointed in any of these Cases.

B.      The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), and (M).  Venue of these Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     On _____ ___, 2010, notice of the preliminary hearing (the "Hearing") was served by facsimile, e-mail or hand-delivery (the "Notice") upon:  (i) the United States Trustee, (ii) the consolidated list of twenty (20) largest unsecured creditors, (iii) certain known secured creditors and/or their counsel, and (iv) certain other parties (collectively, the "Noticed Parties").  Copies of the Motion with a proposed order substantially similar to this Order were served on _____ ___, 2010, on the Noticed Parties by facsimile, e-mail or hand delivery.  The Motion was filed with the Court on _____ ___, 2010, and available for public inspection after that time and date. The Hearing was a preliminary hearing within the meaning of Bankruptcy Rules 4001(b)(2) and 4001(c)(2).

D.     The Debtors acknowledge that, as of the Petition Date, the Debtors are indebted to Presidential in the approximate amount of $1,552,630.58 (together with all interest, attorneys' fees, and other expenses heretofore or hereafter accruing or chargeable to the Debtors and all other obligations of the Debtors under the Pre-Petition Loan Agreement, or other loan documents, is referred to herein as the "Pre-Petition Debt").  The Pre-Petition Debt is evidenced by, among other things, (i) a Loan and Security Agreement dated August 24, 2010 (as amended or modified, the "Pre-Petition Loan Agreement") between the Debtors and Presidential, pursuant to which Presidential agreed to make revolving loans available to the Debtors (as amended or modified, the "Pre-Petition Revolving Loan"), and (ii) a Demand Secured Promissory Note (as amended or modified, the "Pre-Petition Note") dated August 24, 2010 between the Debtors and Presidential.  The Pre-Petition Loan Agreement, together with all other documents related to or evidencing the Pre-Petition Debt shall be collectively referred to herein as the "Pre-Petition Loan Documents."

INTERIM ORDER (1) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING, etc.

3

026734.0101\571785.06

E.     The Pre-Petition Debt constitutes a valid and binding obligation of the Debtors, enforceable in accordance with its terms, and the Debtors will not assert any claims, counterclaims, setoffs or defenses of any kind or nature, which would in any way affect the validity and enforceability of any of the Pre-Petition Debt and Presidential's security interests in and liens upon the Pre-Petition Collateral (as hereinafter defined), or which would in any way reduce the obligation of the Debtors to pay to Presidential in full all of the Pre-Petition Debt.

F.     The Debtors granted to Presidential, in connection with the Pre-Petition Revolving Loan, first priority liens and security interests in accounts, general intangibles, deposit accounts, equipment, and inventory (and other assets as more fully described in the Loan Agreement) (collectively, together with any other property of Debtors' estates in which a security interest or lien has been granted to or for the benefit of Presidential before the Petition Date, the "Pre-Petition Collateral").  The Pre-Petition Loan Documents provide that all of the Pre-Petition Debt is secured by all of the Pre-Petition Collateral.  The Pre-Petition Loan Documents provide that the Pre-Petition Debt is supported by certain guarantees.  The Debtors acknowledge that Presidential holds valid, enforceable and first priority liens on and security interests in the Pre-Petition Collateral evidenced by various Uniform Commercial Code filings and other filings, subject to certain Permitted Encumbrances.  Nothing herein shall modify, affect, or limit any liability or obligations that the non-debtor guarantors owe to Presidential in connection with their respective guarantees.

G.     An immediate and ongoing need exists for the Debtors to obtain financing in order to preserve the value of their business and assets as debtors in possession under Chapter 11 of the Bankruptcy Code and to minimize the disruption of the Debtors as going concerns.  The Debtors are unable to obtain financing in the form of unsecured credit allowable under

Section 503(b)(1) of the Bankruptcy Code, as an administrative expense or solely in exchange for the grant of a superpriority administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code, and other than the financing from Presidential pursuant to the DIP Loan Agreement, the Debtors are unable to obtain financing in the form of credit secured by liens that are junior to existing liens on property of the Debtors' estates pursuant to Sections 364(c)(2) and (c)(3) of the Bankruptcy Code. The relief sought in the Motion is necessary to avoid immediate and irreparable harm and injury to the Debtors' estates.

H.     The Debtors have prepared an initial 13-week budget, a copy of which is attached hereto as Exhibit "A" (as supplemented from time to time in accordance with the DIP Loan Agreement, the "Budget"), setting forth, *inter alia* the Debtors' projected cash expenditures and receipts on a weekly basis, commencing as of the week ending October 22, 2010 through and including the week ending January 11, 2011. The Budget is being relied upon by Presidential in determining to enter into post-petition financing with the Debtors. However, Presidential has only approved the portion of the Budget for three weeks until entry of a final order.

I.     The Debtors have requested that Presidential extend credit based upon the Budget, and Presidential is willing to provide such credit, upon the terms and conditions set forth in the DIP Loan Agreement and this Interim Order. The Pre-Petition Loan Agreement has a Maximum Loan Amount (as defined in the Pre-Petition Loan Agreement) of $1,600,000. The DIP Loan Agreement has a Maximum Loan Amount (as defined in the DIP Loan Agreement) of $1,750,000. The Debtors and Presidential have contemplated raising the Maximum Loan Amount to $1,900,000 (by agreement, but in Presidential's sole discretion).

J.      The terms of the financing authorized by this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment and are supported by reasonably equivalent value and fair consideration.

K.      The DIP Loan Agreement has been negotiated in good faith and at arm's length between the Debtors, on one hand, and Presidential on the other hand, and all loans and other extensions of credit made by Presidential to the Debtors pursuant to the DIP Loan Agreement shall be deemed to have been made in good faith within the meaning of Section 364(e) of the Bankruptcy Code.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:**

1.      The Motion is granted to the extent provided below. This order shall be referred to as the "Interim Order."

2.      The Debtors are hereby authorized (i) to execute and deliver the DIP Loan Agreement, as well as any and all other documents referred to therein or reasonably requested by Presidential to give effect to the terms thereof, (ii) to obtain post-petition loans and other extensions of credit from Presidential from time to time pursuant to the DIP Loan Agreement (all such post-petition loans and extensions of credit, collectively, the "DIP Loans"), to incur any and all liabilities and obligations thereunder, to pay all interest, fees (including, but not limited to, the Loan Facility Fee), any attorneys' fees and expenses and other obligations provided for under the DIP Loan Agreement, and (iii) to pay and perform all obligations, covenants and agreements in accordance with the terms of the DIP Loan Agreement.  If the Debtors and Presidential agree to raise the Maximum Loan Amount to $1,900,000, the Debtors may file a notice of such increase with the Court, any committee appointed, the United States Trustee, any party requesting notice, and the top thirty largest creditors.

INTERIM ORDER (1) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING, etc.

6

026734.0101\571785.06

3.     All Obligations under the DIP Loan Agreement, including but not limited to, all DIP Loans made by Presidential to the Debtors under the DIP Loan Agreement, together with all interest, fees (including legal fees) and all other sums and charges at any time or from time to time payable by the Debtors in connection therewith (collectively, the "Post-Petition Debt"), shall be, and hereby are, secured by: (i) pursuant to Section 364(c)(1) of the Bankruptcy Code, a superpriority claim in these Cases superior to any and all administrative expenses of the Debtors other than the Carve-Out (as hereinafter defined), (ii) pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first priority lien on all unencumbered property of the Debtors, (iii) pursuant to Section 364(d)(1) of the Bankruptcy Code, a perfected first priority, senior priming lien on all pre-petition and post-petition accounts, inventory, and all proceeds thereof; (iv) pursuant to Section 364(c)(3) of the Bankruptcy Code, a perfected junior lien on all property of the Debtors that is subject to valid and unavoidable Permitted Encumbrances in existence at the time of the commencement of these Cases or to Permitted Encumbrances in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by Section 546(b) of the Bankruptcy Code, in each case, only to the extent such Permitted Encumbrances are not otherwise primed as set forth in clause (v) below, and (v) pursuant to Section 364(d)(1) of the Bankruptcy Code, a perfected first priority, senior priming lien on all of the property of the Debtors, subject only to valid and unavoidable Permitted Encumbrances that are in existence on the Petition Date and that under applicable law are senior to and have not been subordinated to the liens and security interests of Presidential in connection with the Pre-Petition Loan Agreement (collectively, the "Post-Petition Collateral" and together with the Pre-Petition Collateral, sometimes collectively referred to herein as the "Collateral"). Wherever in this Interim Order reference is made to any property or assets of the Debtors (including, without

limitation, any of the Collateral), such reference shall be understood to mean all property of the estates of the Debtors created pursuant to Section 541 of the Bankruptcy Code; provided, however, subject to the reservation of rights set forth in paragraph 4 below, the Collateral shall not at this time include proceeds of avoidance actions created under Chapter 5 of the Bankruptcy Code.

4.     The rights of Presidential are reserved in all respects to assert that proceeds of avoidance actions attributable to certain pre-petition payments made by the Debtors from funds withdrawn from or not deposited into the Payment Account (as defined in the Pre-Petition Loan Agreement) are Collateral, and the Court reserves the right, following notice and a hearing, to grant Presidential, as additional adequate protection, a lien in any and all proceeds of avoidance actions created under Chapter 5 of the Bankruptcy Code related to payments made from funds withdrawn from or not deposited into the Payment Account pre-petition.  Notwithstanding anything else stated herein or in the DIP Loan Agreement, the rights of the Debtors are reserved in all respects to oppose any such request for the imposition of a lien in such avoidance actions and the proceeds thereof for Presidential's benefit.

5.     Subject to entry of the Final Order, the Obligations under the Pre-Petition Loan Agreement shall become Obligations under the DIP Loan Agreement and shall be Post-Petition Debt.

6.     In no event shall any lien or security interest granted to Presidential pursuant to the DIP Loan Agreement, or conferred upon Presidential by the terms of this Interim Order, be subject to any pre-petition or post-petition lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Section 551 of the Bankruptcy Code; and in no event shall any person or entity who pays (or, through the extension of credit to the Debtors, causes to

INTERIM ORDER (1) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING, etc.

8

026734.0101\571785.06

be paid) any of the Post-Petition Debt be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted to or in favor of, or conferred upon, Presidential by the terms of the DIP Loan Agreement or this Interim Order, until such time as all of the Post-Petition Debt is indefeasibly paid and satisfied in full (in the manner specified in the DIP Loan Agreement) and the DIP Loan Agreement is terminated in accordance with its terms.

7.     The term of the interim financing arrangements among Presidential and the Debtors authorized by this Interim Order shall be for a period commencing on the date hereof and ending on the sooner of: (i) thirty (30) days after the entry of the Interim Order, if the Final Order has not been entered prior to the expiration of such 30-day period, or (ii) the acceleration of the loans and the termination of the Commitment in accordance with the DIP Loan Agreement.     On termination of the DIP Loan Agreement, all Post-Petition Debt shall be indefeasibly paid and satisfied in full in the manner specified in the DIP Loan Agreement.

8.     All rents, income, profits, cash in accounts and deposits derived from the Collateral constitute cash collateral (collectively, the "Cash Collateral").   Provided that each of the Cash Collateral Conditions (hereinafter defined) is satisfied, then the Debtors shall be authorized to use Presidential's Cash Collateral as set forth below.   As used herein, the term "Cash Collateral Conditions" shall mean the following conditions, the satisfaction of each of which shall be a condition to Debtors' authorization to use any Cash Collateral:  (i) no Event of Default under (and as defined in) the DIP Loan Agreement exists and is continuing, and (ii) termination of the DIP Loan Agreement has not occurred.  If on any date, any of the Cash Collateral Conditions is not satisfied, then the Debtors shall not be authorized to use any Cash Collateral unless and until such use is consented to by Presidential in its sole and absolute discretion.  Absent further order of the Court, if the DIP Loan Agreement is terminated, then the

Debtors shall remit to Presidential any Cash Collateral then in the Debtors' possession for application as set forth herein.

9.     The Debtors will continue to deliver all cash derived from all sources to Presidential.  Before entry of the Final Order, Presidential is authorized to apply all Cash Collateral from Pre-Petition Collateral to the Pre-Petition Debt (in such order as determined by Presidential in its sole discretion).  As adequate protection pursuant to sections 361 and 363 of the Bankruptcy Code for the diminution in value arising out of the Debtors' use, sale, or other disposition, from the Petition Date forward, of any of the Pre-Petition Collateral or the Cash Collateral in which Presidential (in its capacity as Pre-Petition lender) held a valid, perfected, and unavoidable lien and security interest on the Petition Date, Presidential (in its capacity as pre-petition Lender) is hereby granted a continuing, additional, and replacement lien and security interest in all property of the estate subject only to:  (i) the senior and/or priming liens and security interests granted to Presidential (in its capacity as post-petition Lender) pursuant to this Interim Order, and (ii) unavoidable liens of record existing on the Petition Date that, under applicable law, are prior in time or otherwise senior to and have not been subordinated to the liens and security interests in favor Presidential.

10.     Subject to the Carve Out, all Post-Petition Debt shall have superpriority administrative expense status in accordance with the provisions of Section 364(c)(1) of the Bankruptcy Code over all other administrative expenses in these Cases of the kind specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(b), 507(a), and/or 507(b) of the Bankruptcy Code.

11.     The Debtors are authorized to use the proceeds of the DIP Loan solely for purposes authorized by the DIP Loan Agreement and solely in accordance with the Budget,

within the variances set forth below. The Debtors, unless waived by Presidential, may not exceed, on a rolling four week basis, any disbursement line item in the Budget by more than ten percent (10%), nor may Debtors exceed, on a rolling four week basis, the aggregate disbursements in the Budget by more than five percent (5%). Likewise, the Debtors are required to collect receivables in an amount not less than ninety percent (90%) of the amounts set forth in the Budget on a rolling four week basis. Failure of the Debtors to attain or comply with the Budget (within the variances on a four week rolling basis) shall be an Event of Default, as hereinafter defined, unless waived by the Presidential. The Debtors will provide a report to Presidential by 10:00 a.m. (prevailing Eastern time) of Wednesday of each week comparing actual expenses and receipts to the Budget. The weekly report shall be in a form acceptable to Presidential.

   12. The Debtors shall concurrently herewith or hereafter, as requested by Presidential, authorize, execute, and deliver to Presidential all such documents as Presidential may request to effectuate, evidence, confirm, validate or perfect Presidential's liens on and security interests in the Collateral as provided for herein or granted pursuant to any of the DIP Loan Agreement, including, without limitation, UCC-1 financing statements, mortgages, continuation statements, amendments, lock box and blocked account agreements. Presidential shall not be required to file any UCC-1 financing statements, or any other document, or take any other action (including possession of any of the Pre-Petition Collateral or Post-Petition Collateral) in order to validate or perfect the liens and security interests granted to Presidential hereunder or under any of the DIP Loan Agreement, as all such liens and security interests shall be deemed automatically perfected by and upon entry of this Interim Order. If Presidential shall, in its discretion, choose to file such UCC-1 financing statements (or amendments to or continuations of any existing financing

statements) and otherwise confirm perfection of such liens and security interests, all such financing statements or similar instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order. Presidential may, in its discretion, file a certified copy of this Interim Order in any filing or recording office in any jurisdiction in which the Debtors have or maintain any Pre-Petition Collateral or Post-Petition Collateral or an office.

13.     All reasonable costs and out-of-pocket expenses incurred by Presidential in connection with the negotiation and drafting of the DIP Loan Agreement, or any amendments thereto, the preservation, protection and enforcement of Presidential's rights hereunder or under the DIP Loan Agreement, the Interim and/or Final Order providing for financing by Presidential or in the collection of the Post-Petition Debt, including, without limitation, all filing and recording fees and any attorneys' fees incurred in connection with any of the foregoing, whether any of the foregoing were incurred prior to or after the Petition Date, shall form a part of the Post-Petition Debt, without any further order of the Court to the extent provided in the DIP Loan Agreement and shall be paid by the Debtors in accordance with the terms of the DIP Loan Agreement. The Debtors, any unsecured creditors' committee and the U.S. Trustee shall receive notice of the amount of such costs and expenses and shall have 10 days from receipt of such notice to object to reasonableness. The Court shall have jurisdiction to resolve any dispute regarding reasonableness.

14.     The Debtors and Presidential are hereby authorized to implement by mutual consent after the entry of this Interim Order, in accordance with the terms of the DIP Loan Agreement, any amendments to and modifications of the DIP Loan Agreement, or any of the Loan Documents, without further order of the Court on the following conditions:  (i) the amendment or modification does not constitute a material change to the terms of the DIP Loan

INTERIM ORDER (1) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING, etc.

12

026734.0101\571785.06

Agreement (and, for purposes hereof, a "material change" shall mean a change that operates to increase the rate of interest other than as currently provided in the DIP Loan Agreement, add specific events of default, increase the aggregate amount of the commitments, or enlarge the nature and extent of default remedies available to Presidential following an event of default), and (ii) copies of the amendment or modification must be served upon counsel for any committee appointed in these Cases (if any) and the U.S. Trustee. Any amendment or modification that constitutes a material change, to be effective, must be approved by the Court.

15.     Upon or after the occurrence, and during the continuance, of a Default or an Event of Default under (and as defined in) the DIP Loan Agreement, then, and in any such event, Presidential shall be fully authorized, in its sole discretion, to cease making DIP Loans to the Debtors. Notwithstanding anything else contained herein or in the DIP Loan Agreement, Presidential in its sole discretion may waive any Default or Event of Default under this order or the DIP Loan Agreement. Upon written notice to the Debtors of the occurrence and during the continuance of an Event of Default, Presidential shall be fully authorized, in its sole discretion, to immediately terminate the DIP Loan Agreement and/or demand payment of the Post-Petition Debt then outstanding, and to immediately take any action necessary to preserve and protect the Collateral. However in the case of an Event of Default that does not result from a (a) monetary default, (b) budgetary default, or (c) unauthorized use of cash collateral default, Presidential shall provide written notice of any such default to Debtors and its counsel and Debtors shall have three (3) business days to cure such default and Presidential shall have no obligation to make any advances to Debtors under the DIP Loan Agreement during such cure period. In addition, upon expiration of three (3) business days after notice to the Debtors and their counsel, the U.S. Trustee and counsel to the unsecured creditors' committee (if any), is provided by Presidential of

the occurrence of the Event of Default that remains uncured, the automatic stay provided for by § 362 of the Bankruptcy Code shall automatically be lifted to allow Presidential to take any other action not already authorized by the immediately preceding sentence in order (i) to enforce its security interests and liens granted under the DIP Loan Agreement or provided for in this Interim Order with respect to the Collateral, (ii) to exercise all other remedies under the DIP Loan Agreement and applicable law which may be deemed necessary or appropriate by Presidential to collect any of the Post-Petition Debt and (iii) to proceed against or realize upon all or any portion of the Collateral as if these Cases or any superseding cases under Chapter 7 were not pending.

16.     Nothing herein shall be deemed to be a waiver by Presidential of its right to request additional or further protection of its interests in any property of the Debtors, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner or the dismissal of any of these Cases, or to request any other relief.  Nor shall anything herein or in any of the Loan Documents constitute an admission by Presidential of the quantity, quality or value of any Collateral securing the Pre-Petition Debt or Post-Petition Debt or constitute a finding of adequate protection with respect to the interests of Presidential in any Collateral.  Subject to the Carve-Out, Presidential shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of Section 507(b) of the Bankruptcy Code in connection with any use, sale or other disposition of any of the Collateral, to the extent that the protection afforded by this Interim Order to Presidential in any Collateral proves to be inadequate.

17.     Presidential's pre-petition claims, liens, and security interests shall be deemed valid, perfected, and enforceable as to all creditors and parties-in-interest, and shall be subject to no further challenge, unless a creditor or party-in-interest, including, without limitation, any committee appointed in these Cases (if any), (i) shall have commenced an adversary proceeding

INTERIM ORDER (1) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING, etc.

14

026734.0101\571785.06

or contested matter against Presidential for the purpose of challenging the validity, extent, priority, perfection, and enforceability of the Pre-Petition Debt or Presidential's claims, mortgages, and security interests in the Pre-Petition Collateral or otherwise asserting any claims or causes of action against Presidential on behalf of the Debtors' estates, no later than forty-five (45) days after entry of this Order or in the case of any unsecured creditors' committee forty-five (45) days after its appointment, and (ii) the Court rules in favor of the plaintiff or movant in any such timely filed adversary proceeding or contested matter. Any person or entity, including without limitation any committee, that fails to commence such an adversary proceeding or contested matter within such periods shall be barred from doing so.

18.     As set forth in the Budget and described in the DIP Loan Agreement, as a carve-out of Presidential's liens in the Collateral, the Debtors shall be authorized to use proceeds of the Collateral and the DIP Loans to pay (a) accrued and unpaid fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), (b) fees payable to the Clerk of the Bankruptcy Court, or any agent thereof, (c) $50,000 for the benefit of Debtors' counsel, and (d) $50,000 for the benefit of Debtors' counsel after payment in full of Obligations owing to Presidential as a lender under the DIP Loan Agreement but before payment of any of the Chiron Participation **(the "Carve-Out").** In no event shall there be paid from any Cash Collateral, Collateral, or DIP Loans any fees and expenses incurred in (i) seeking to avoid, invalidate, subordinate, or otherwise impair any pre- or post-petition claims of Presidential, or any pre- or post-petition liens or priorities created in favor of Presidential, (ii) seeking to recover on any claims against or transfers made to Presidential, or (iii) seeking to prevent, hinder or delay Presidential from enforcing or realizing upon any of the Collateral.

INTERIM ORDER (1) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING, etc.

15

026734.0101\571785.06

19.     Subject to the entry of a Final Order, the Debtors hereby waive and release their rights (i) to challenge or contest the extent, priority, or validity of any liens or security interests securing the Pre-Petition Debt, (ii) to assert counterclaims or setoffs with respect to the Pre-Petition Debt, and (iii) to assert any claims or causes of action against Presidential on account of the Pre-Petition Debt or any of the Pre-Petition Loan Documents, including, but not limited to, any claims under Chapter 5 of the Bankruptcy Code or otherwise. Presidential shall not be under any obligation to marshal any assets in favor of the Debtors or any other party or against or in payment of any or all of the Pre-Petition Debt and/or Post-Petition Debt.

20.     Subject to the entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in any Budget) by any person or entity shall be imposed against Presidential, its claims, or its collateral under § 506(c) of the Bankruptcy Code or otherwise, unless, prior to incurring such costs or expenses the party proposing to incur such cost or expense shall obtain the written consent of Presidential, allowing such charge to be imposed against Presidential, its claims or its collateral under § 506(c) of the Bankruptcy Code. Nothing in the Final Order or any Budget shall constitute the consent by Presidential, to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the Budget) against Presidential, its claims or its collateral under § 506(c) of the Bankruptcy Code or otherwise. Notwithstanding anything to the contrary contained in this Order, the superpriority claim of Presidential shall not be used as a basis to recover any payments authorized and made in these cases pursuant to the Budget (including any variances to the Budget that are authorized by the Presidential in accordance with the terms of the DIP Agreement) in the ordinary course of business

INTERIM ORDER (1) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING, etc.

16

026734.0101\571785.06

21.     The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby lifted and terminated as to Presidential, to the limited extent necessary to implement the provisions of this Interim Order and the DIP Loan Agreement, thereby permitting Presidential, among other things, to file or record any UCC-1 financing statements, mortgages and other instruments and documents evidencing the liens and security interests granted to Presidential in the Pre-Petition Collateral and Post-Petition Collateral, and to take all other actions authorized by the Court in this Interim Order.

22.     The Debtors shall provide Presidential with (i) all financial statements, certificates, and reports required pursuant to the DIP Loan Agreement in accordance with the time-frames specified therein and (ii) such additional information as Presidential shall request from the Debtors.  Presidential and its agents shall have access to the Debtors' business premises and to the Collateral to review and evaluate the physical condition of any of the Collateral. Presidential and its agents may also inspect the financial records and other records of the Debtors concerning the operation of the Debtors' business, and may review the Debtors' overall financial condition, the expenditure of funds generated therefrom, the cost reduction plan, the accrual of expenses relating thereto, and any other records relating to the operation of the Debtors.  In connection therewith, the Debtors shall make any turnaround consultant (if any) available to Presidential and its agents to discuss any of the above related information, and such other matters as Presidential may reasonably request.

23.     All DIP Loans are made in reliance on this Interim Order and the Debtors shall not (i) seek at any time prior to the termination or non-renewal by Presidential of the DIP Loan Agreement, authority to sell, lease, or otherwise dispose of property of any of the Debtors' estates out of the ordinary course of business, unless the same is permitted by the DIP Loan

INTERIM ORDER (1) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING, etc.

17

026734.0101\571785.06

Agreement or Presidential shall have given its express prior written consent thereto (no such consent being implied from any other action, inaction or acquiescence by Presidential), (ii) use Cash Collateral, at any time after the termination or non-renewal by Presidential of the DIP Loan Agreement, unless Presidential shall have given its express prior written consent thereto (no such consent being implied from any other action, inaction or acquiescence by Presidential) or the Court orders otherwise, (iii) at any time seek, propose or support (directly or indirectly) the entry of any order which authorizes the obtaining of credit or the incurring of indebtedness under Section 364 of the Bankruptcy Code that is secured by the Collateral on a basis (x) priming or (y) *pari passu* to the Post-Petition Debt, unless (a) Presidential shall have given express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by Presidential or (b) such other order requires that the Post-Petition Debt shall first be indefeasibly paid and satisfied in full (in the manner specified in the DIP Loan Agreement), including all debts and obligations of the Debtors to Presidential which arise or result from the DIP Loans and liens in the Collateral authorized herein, or (iv) propose any sale of Collateral (pursuant to 11 U.S.C. § 363, a plan of reorganization, or otherwise) that seeks to limit or prohibit Presidential from credit bidding the Pre-Petition Debt or the Post-Petition Debt. The liens and security interests granted to or for the benefit of Presidential hereunder and the rights of Presidential pursuant to this Interim Order with respect to the Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization, or otherwise without Presidential's express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence.

24.     No terms or provisions of the DIP Loan Agreement, Interim Order or Final Order, or any other of the DIP Loan Documents may be altered, amended or modified by any plan of

INTERIM ORDER (1) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING, etc.

18

026734.0101\571785.06

reorganization or otherwise, without Presidential's express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence. The provisions of this Interim Order shall be binding upon the Debtors and their respective successors and assigns, including, without limitation, any trustee appointed in any of these Cases or any case to which any of these Cases are subsequently converted. The rights, remedies, powers and privileges conferred upon Presidential pursuant to this Interim Order shall be in addition to and cumulative with those contained in the DIP Loan Agreement and Pre-Petition Loan Agreement. Except as otherwise explicitly set forth in this Interim Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Interim Order or the DIP Loan Documents.

25. For so long as any Pre-Petition Debt or Post-Petition Debt remains outstanding, the Debtors shall not, directly or indirectly, create, incur, assume or permit to exist any security interest, encumbrances, lien or other security arrangement of any kind, on or with respect to any of their assets, or take or fail to take any action which would grant or create a lien in favor of any person in such assets, except as otherwise provided for in the DIP Loan Agreement.

26. In making decisions to advance any DIP Loans or other extensions of credit to the Debtors, in administering any DIP Loans or other extensions of credit, or in taking any other actions reasonably related to this Interim Order or the DIP Loan Documents (including, without limitation, the exercise of its approval rights with respect to any budget), Presidential shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute),

and Presidential's relationship with the Debtors shall not constitute or be deemed to constitute a joint venture or partnership of any kind between Presidential and the Debtor.

27.     No plan of reorganization that does not provide for the payment in full of the Post-Petition Debt and Pre-Petition Debt shall be proposed or supported by the Debtor or any insider of the Debtor without Presidential's express prior written consent thereto, no such consent being implied from any other action, inaction, or acquiescence.  Presidential shall have the right to credit bid any and all Pre-Petition Debt and Post-Petition Debt at any sale or auction, including, but not limited to any sale or auction through or pursuant to any plan of reorganization.

28.     Presidential (in its sole discretion) shall be authorized to enter into a loan participation agreement with Chiron Equities, LLC, JK Air Investment Group, LLC, Jay Krasoff, or any other affiliates of the same (the "Chiron Participation") and accept additional participations in the DIP Loan Agreement under the Chiron Participation.

29.     Consistent with 11 U.S.C. § 364(e), if any or all of the provisions of this Interim Order are hereafter modified, vacated or stayed:

(i)      such stay, modification or vacation shall not affect the validity of any obligation, indebtedness, liability or lien granted or incurred by the Debtors to Presidential before the effective date of such stay, modification or vacation, or the validity, enforceability or priority of any lien, priority or right authorized or created under the original provisions of this Interim Order or pursuant to the DIP Loan Agreement; and

(ii)     any indebtedness, obligation or liability incurred by  the Debtors to Presidential under the DIP Loan Agreement prior to the effective date of such stay, modification or vacation shall be governed in all respects by the original provisions of this Interim Order, and

Presidential shall be entitled to all the rights, remedies, privileges and benefits, including the liens, security interests and priorities granted herein and pursuant to the DIP Loan Agreement, with respect to any such indebtedness, obligation or liability. All DIP Loans made pursuant to the DIP Loan Agreement are made in reliance upon this Interim Order, and, therefore, the indebtedness resulting from such DIP Loans prior to the effective date of any stay, modification or vacation of this Interim Order cannot (a) be subordinated, (b) lose its lien priority or superpriority administrative expense claim status, or (c) be deprived of the benefit of the status of the liens and claims granted to Presidential under this Interim Order and/or the DIP Loan Agreement, as a result of any subsequent order in these Cases, or in any superseding case.

30.     Until all Post-Petition Debt shall have been indefeasibly paid and satisfied in full (in the manner specified in the DIP Loan Agreement) and without further order of the Court, no party in interest shall foreclose or otherwise seek to enforce any lien junior or subordinate to Presidential's liens on and security interests in the Collateral or other right such other party may have in and to any Collateral; provided, however, that the foregoing shall not be construed to prohibit any other party in interest having standing to do so to seek adequate protection of its interest in any of the Collateral.

31.     To the extent the terms and conditions of the DIP Loan Agreement is in conflict with the terms and conditions of this Interim Order, the terms and conditions of this Interim Order shall control.

32.     The provisions of this Interim Order shall be effective immediately upon entry of this Interim Order pursuant to Bankruptcy Rule 6004(h) by the Court and any actions taken pursuant thereto shall survive entry of, and shall govern with respect to any conflict with any

INTERIM ORDER (1) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING, etc.

21

026734.0101\571785.06

Order which may entered confirming any plan(s) of reorganization, dismissing any of these Cases, or converting any of these Cases from Chapter 11 to Chapter 7.

33.     Service of a copy of this Order shall be accomplished by Debtors via regular first class U.S. Mail upon the Noticed Parties and such other parties as the Court may direct within 5 days of entry of this Order, which shall be deemed good and sufficient service and notice hereof for all purposes.

34.     A final hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) (the "Final Hearing") is scheduled for _____ ___, 2010, at __:__ _.m., in Courtroom ___ located at _____.  Notice of the Final Hearing shall be provided by Debtors via regular first class U.S. Mail to all appropriate parties on or before_____ ___, 2010. Any opposition to the Motion at the Final Hearing shall be served on (i) counsel for Debtors, _____, (ii) counsel for Presidential, Patton Boggs LLP, 2000 McKinney Avenue, Suite 1700, Dallas, Texas 75201, Attn: H. Jefferson LeForce, and (c) the United States Trustee, and filed with the Court and received by the foregoing parties by _____ ___, 2010.

# # # END OF ORDER # # #

INTERIM ORDER (1) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING, etc.

22

026734.0101\571785.06

# EXHIBIT A

## **BUDGET**