HELLER, DRAPER, HAYDEN, PATRICK & HORN, LLC
Attorneys for the Debtors
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
(504) 299-3300

Douglas S. Draper, LA Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, LA Bar No. 14891
lcollins@hellerdraper.com
Kendra M. Goodman, LA Bar No. 32790
kgoodman@hellerdraper.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **CONGRESS SAND & GRAVEL, LLC,** *et al[1].* | § | **Case No. 10-37522(SGJ)** |
| | § | |
| **DEBTORS.** | § | **Chapter 11** |
| | § | **(Jointly Administered)** |

**CHAPTER 11 PLAN OF REORGANIZATION
FOR CONGRESS MATERIALS LLC AND CONGRESS SAND AND GRAVEL LLC
AS OF JUNE 28, 2011**

`Deleted: MAY 11`

Submitted by:

/s/ Douglas S. Draper
DOUGLAS S. DRAPER, (Bar #5073)
**Heller, Draper, Hayden, Patrick & Horn, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Telephone:  504-299-3300
Facsimile:  504-299-3399
*Attorneys for Debtors*

---

[1] The Debtors include Congress Sand & Gravel, LLC and Congress Materials, LLC (Case No. 10-37526).

{00317317-1}

`Deleted: {00315484-3}`

`Formatted: Do not check spelling or grammar`

Congress Materials, LLC ("Congress Materials") and Congress Sand and Gravel, LLC ("Congress Sand') as debtors and debtors-in-possession ("Debtors"), propose the following Chapter 11 Plan of Reorganization with respect to their Chapter 11 cases.

# ARTICLE 1

## DEFINITIONS AND CONSTRUCTION OF TERMS

Unless the context requires otherwise, each term stated in either the singular or the plural will include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender will include the masculine, the feminine and the neuter. Unless the context requires otherwise, the following words and phrases will have the meanings set forth below when used in the initially-capitalized form in this Plan: An initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require. The words "in this Plan", "this Plan", "hereto", "hereof," "herein," or "hereunder" and other words of similar import, unless specifically stated otherwise, refer to the entirety of the Plan, and not to a particular Section of the Plan. The words "Article," "Section," "subsection," "clause" or "sentence" refer to particular provisions of the Plan and not to the entirety thereof. The word "including" (and with correlative meaning, the word "include") means including, without limiting or restricting the generality of any description preceding the word "including" or "include," and shall mean "including, but not limited to." The use of the word "any" shall mean "any and all," and the use of the word "all" shall also mean "any and all." The words "shall" and "will" are used interchangeably and have the same meaning. Unless the context requires otherwise, the following words and phrases shall have the meanings set forth below when used in initially capitalized form in this Plan:

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

1. **"Administrative Claim"** means a Claim for costs and expenses of administration of the Reorganization Cases and any allowed interest under section 503(b) of the Bankruptcy Code entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code.

2. **"Allowed Administrative Claim"** means all or that portion of an Administrative Claim which has been allowed pursuant to a Final Order of the Bankruptcy Court.

3. **"Allowed"** means, with respect to a Claim or Interest, except as otherwise allowed or provided for in the Plan or a Final Order of the Bankruptcy Court, a Claim or Interest, proof of which was timely and properly Filed or, if no proof of claim or proof of interest was Filed, which has been or hereafter is listed by the Debtors on their Schedules as liquidated in amount and not disputed or contingent, and, in either case, as to which:

   (a)    no objection to the allowance thereof has been interposed on or before the later of: (i) the one hundred twentieth (120th) day after the Effective Date, or (ii) such other applicable period for objection as may be fixed or extended by the Court, or

   (b)    any objection thereto has been determined by a Final Order to the extent such objection is determined in favor of the respective holder.

Unless otherwise specified herein or by order of the Court, an "Allowed Claim," "Allowed Unsecured Claim" or "Allowed Secured Claim" of a particular Class shall not include any interest, fees, costs or other charges on such Claim accruing after the Petition Date.

4. **"Allowed Priority Tax Claim"** means all or that portion of a Priority Tax Claim to which no objection has been filed as the Effective Date or if an objection has been filed such Priority Tax Claim has been allowed pursuant to a Final Order of the Court.

5. **"Allowed Secured Claim"** means all or that portion of a Secured Claim which has been allowed pursuant either due to the fact that no objection has been filed by the Effective Date or if an objection has been filed such Allowed Secured Claim has been allowed by Final

Deleted:

Deleted: Bankruptcy

Deleted: a

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

Order of the Bankruptcy Court and which claim shall include any amounts allowed under 11 U.S.C. § 506.

6.  **"Allowed Unsecured Claim"** means all or that portion of an Unsecured Claim allowed by Final Order of the Bankruptcy Court.

7.  **"Avoidance Actions"** means all of the Debtors' and the Estates' rights and claims under sections 502, 522(f), 541 through 553, inclusive, and 724(a) of the Bankruptcy Code, or under any similar or related state or federal statute or common law, whether or not an action is initiated on or before the Effective Date.

8.  **"Ballot"** means the form to be distributed with the Disclosure Statement to each holder of an Impaired Claim on which the holder is to indicate acceptance or rejection of this Plan.

9.  **"Bankruptcy Code"** means Title 11 of the United States Code, or the Bankruptcy Reform Act of 1978, as amended.

10.  **"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of Texas, or, in the event such court ceases to exercise jurisdiction over the Reorganization Cases, such court or adjunct thereof that exercises jurisdiction over the Reorganization Cases in lieu of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

11.  **"Bankruptcy Rules"** means collectively, the (a) Federal Rules of Bankruptcy Procedure, (b) Federal Rules of Civil Procedure, and (c) Local Rules of the Bankruptcy Court, as applicable from time to time in the Reorganization Cases, or proceedings therein, as the case may be.

12.  **"Business Day"** means any day other than a Saturday, Sunday or Federal holiday in the United States.

13.  **"Cash"** means cash or cash equivalents.

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

14.    **"Causes of Action"** shall mean, without limitation, any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, debts, sums of money, damages, judgments, claims and demands, actions, defenses, offsets, powers (including all police, regulatory, and enforcement powers and actions that may be taken), privileges, licenses, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whatsoever, whether known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or tort, in law, equity or otherwise, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable.

Causes of Action shall include, but are not limited to (a) damages, (b) the recovery of monies, (c) lien avoidance, subordination, surcharge, re-characterization, rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law, (d) tax refunds, (e) injunctive, equitable, or other relief, (f) claims pursuant to Section 362 of the Bankruptcy Code, (g) such claims and defenses as fraud, mistake, duress, and usury, (h) Avoidance Actions, (i) objections to the allowance of claims for disgorgement and/or otherwise, including any related to the extent, priority, subordination, or validity of liens, (j) claims for preferences, fraudulent transfers and conveyances under the Bankruptcy Code, (k) claims for simulation, fraud, revocatory action, oblique action, and fraudulent transfers and conveyances under Texas state law or any other applicable law, (l) claims pursuant to title 18 U.S.C. and any claims or causes of action related to any of the foregoing, (m) all equitable subordination claims under 11 U.S.C. § 510, (n) all claims arising under all theories of recovery relating to participatory, vicarious, secondary, and related theories of liability including aiding and abetting, conspiracy, principal-agent, partnership, common enterprise, joint and several liability, proportionate responsibility, and contribution, (o) equitable claims including claims for lien

subordination and contempt and any claims or causes of action related to any of the foregoing, (p) any claims or proceedings for recovery under any policies of insurance issued to or on behalf of the Debtors or any judgment obtained on behalf of any of the Debtors, (q) all claims arising from tort theories of recovery, including tortious interference with existing contract, tortious interference with contractual/business relations, conversion, breach of fiduciary duty, breach of duty as an officer and director of the Debtors' entities, fraud, bankruptcy fraud, negligence, gross negligence, trade-secret misappropriation, failure to disclose, misrepresentation, malpractice, libel, slander, malicious prosecution, bad faith denial of coverage or other insurance claim, and any claims or causes of action related to any of the foregoing, (r) all claims arising from all contract theories of recovery, including contract and usury, quasi-contract claims, including quantum merit, promissory estoppel, suit on a sworn account, money had and received and any claims or causes of action related to any of the foregoing, (s) Retained Causes of Action, and (t) all causes of action that may be directly or derivatively asserted on behalf of the Debtors, their Estates, or the Reorganized Debtors. Causes of Action shall also include the XTO Matter and the JTM Claim.

15. **"Chiron Equipment Claim"** shall mean the Claim of Chiron Equities, LLC arising out of the note secured by the Volvo L330C Wheel Loader & 2005 Terex Pegson 1412 Trakpactor Crusher.

16. **"Chrysler"** shall mean TD Auto Finance LLC f/k/a Chrysler Financial Services Americas LLC.

17. **"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

18. **"Class"** means a category of holders of Claims classified together pursuant to section 1123(a)(1) of the Bankruptcy Code.

19.    **"Committee"** means Official Unsecured Creditors' Committee appointed in this case to the extent a committee exists and the members thereto.

20.    **"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

21.    **"Confirmation Hearing"** means the hearing held pursuant to section 1128(a) of the Bankruptcy Code at which the Bankruptcy Court considers confirmation of this Plan, including any continuances thereof.

22.    **"Confirmation Order"** means the final order of the Bankruptcy Court entered following the Confirmation Hearing that confirms this Plan.

23.    **"Continental"** shall mean Continental Bank.

24.    **"Creditor"** means the holder of an Allowed Claim.

25.    **"Cure Payment"** means actual pecuniary loss due or required to be paid under Section 365(b)(1)(A)-(C) of the Bankruptcy Code on an assumed contract or unexpired lease.

26.    **"Debtors"** mean Congress Materials, LLC (successor to Green Aggregates, Inc.) and Congress Sand & Gravel, LLC, collectively.

27.    **"Debtors in Possession"** mean the Debtors between the Petition Date and the Effective Date.

28.    **"Deere"** shall mean John Deere Credit Corporation.

29.    **"Deere Congress"** shall mean the Claim of Deere arising out of its loan to Congress Materials.

30.    **"Deficiency Claim"** shall mean the difference between a Creditor's Claim and such Creditor's Allowed Secured Claim.

31.    **"DIP Facility"** shall mean the Debtor in Possession loan facility among the Debtors and Presidential, which provides Presidential a first priority lien in the Debtors'

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

accounts, inventory, and other assets, as set forth in the DIP Orders and Debtor-in-Possession Loan and Security Agreement.

32.     **"DIP Orders"** shall mean the relief granted at the final hearing on November 23, 2010 and final order entered on December 16, 2010 (Docket No. 143) entitled "Final Order (1) Authorizing the Debtors to Obtain Post-Petition Financing, Granting Senior Security Interests and According Priority and Administrative Expense Pursuant to Section 364(c) and 364(d) of the Bankruptcy Code, (2) Authorizing the Use of Cash Collateral (3) Granting Adequate Protection, and (4) Modifying the Automatic Stay" and as applicable the relief granted at the interim hearing on November 1, 2010 and the interim order entered on November 5, 2010 (Docket No. 64) entitled "Interim Order (1) Authorizing the Debtors to Obtain Post-Petition Financing, Granting Senior Security Interests and According Priority and Administrative Expense Pursuant to Section 364(c) and 364(d) of the Bankruptcy Code, (2) Authorizing the Use of Cash Collateral (3) Granting Adequate Protection, (4) Modifying the Automatic Stay, and (5) Approving Form and Manner of Notice and Scheduling a Final Hearing Under Bankruptcy Rule 4001(c)."

33.     **"Disallowed Claim"** means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

34.    **"Disclosure Statement"** means the Disclosure Statement for the Debtors to accompany this Plan, as modified or amended, filed with and approved by the Bankruptcy Court on _____ 2011.

35.    **"Disputed Claim"** or **"Disputed Interest",** means any Claim, which is neither an Allowed Claim nor a Disallowed Claim, or an Allowed Interest nor a disallowed Interest, as the case may be. In the event that any part of a Claim or Interest is disputed, such Claim or Interest in its entirety shall be deemed to constitute a Disputed Claim or Disputed Interest for purposes of distribution under this Plan unless a Final Order has been entered providing otherwise. Without limiting any of the foregoing, a Claim or Interest that is the subject of a pending objection, motion, complaint, counterclaim, setoff, Avoidance Actions, litigation claim or other defense, or any other proceeding seeking to disallow, subordinate or estimate such Claim, shall be deemed to constitute a Disputed Claim or Disputed Interest, as the case may be.

36.    **"Distribution"** means any payment with respect to Allowed Claims under this Plan.

37.    **"Effective Date"** shall be the day selected by the Debtors that is after the Confirmation Date, but in no event shall be more than ten (10) days after all conditions to the effectiveness of this Plan have been satisfied or waived or more than sixty (60) days after the Order confirming the Plan becoming a Final Order.

**Deleted:** confirmation of this

38.    **"Equity"** or **"Equity Bank"** shall mean Triumph Savings Bank, SSB f/k/a Equity Bank, SSB.

39.    **"Equity Interest"** means the Interests in the Debtors.

40.    **"Estates"** means the estates created in the Reorganization Cases under section 541 of the Bankruptcy Code.

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

**41.** **"Exit Facility"** shall mean a loan facility to potentially be provided by Presidential or some other entity upon the Effective Date of the Plan, to pay the Claim of Presidential and provide a working capital facility for the Debtors after the Effective Date.

**42.** "**File**" or "**Filed**" means filed with the Bankruptcy Court in the Reorganization Cases, as reflected on the official docket of the Bankruptcy Court for the Reorganization Cases.

**43.** **"Final Order"** means an order or judgment of the Bankruptcy Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, rearguement, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired, with no further appeal, petition for certiorari or motion for reargument or rehearing pending; *provided, however,* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule of the Bankruptcy Rules, may be filed with respect to such order or judgment shall not render such order or judgment not to be a Final Order.

**44.** **"Ford"** shall mean Ford Motor Credit Corporation.

**45.** **"Governmental Unit"** shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

**46.** **"Impaired"** means a Claim or Interest or a Class of Claims or a Class of Interests that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

47. **"Insider Claims"** shall mean all those claims, both secured or unsecured, held by Chiron Equities, LLC, Congress Recycled Aggregates, LLC, JK Air Investment Group, LLC, First KT Lending, LLC or KT Foods, LLC, except for the Chiron Equipment Claim and any lease of personal property between the Debtors and Chiron Equities, LLC. The term Insider Claims includes the current participation by Chiron Equities, LLC in the Presidential DIP Facility.

48. **"Interest"** means the holder of any current or former holder of an "equity security" (as defined in Section 101(16) of the Bankruptcy Code).

49. **"JTM Claim"** means any Cause of Action of Congress Materials against JTM Materials, Inc., arising from events prior to, on, or after the Petition Date, including but not limited to a cause of action for post-petition setoff or unpaid post-petition purchases.

50. **"Owners"** mean the owners of an Interest in Debtors.

51. **"Patriot"** shall mean Patriot Bank

52. **"Person"** shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

53. **"Petition Date"** means October 28, 2010.

54. **"Presidential"** shall mean Presidential Financial Corporation.

55. **"Presidential Claim"** shall mean the pre and post Petition Date Claim of Presidential.

56. **"Plan"** means this plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time by the Debtors or the Reorganized Debtors in accordance with the Bankruptcy Code and Bankruptcy Rules.

57. **"Priority Tax Claim"** shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

58. **"Pro Rata"** shall mean a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim or Allowed Interest in a Class to the amount of such Allowed Claim or Allowed Interest is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims or Allowed Interests in such Class.

59. **"Professional"** means an Person (a) employed in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) to whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4), 506, or 1129(a)(4) of the Bankruptcy Code.

60. **"Professional Fee Claim"** means those fees and expenses claimed by Professionals pursuant to sections 330, 331, 503, 506, and/or 1129(a)(4) of the Bankruptcy Code, and unpaid as of the Confirmation Date.

61. **"Property" or "Properties"** means any and all assets of the Debtors' respective Estates, including any assets of the Estates that are vested in the Reorganized Debtors on the Effective Date.

62. **"Reorganization Cases"** means these jointly administered bankruptcy cases under Chapter 11 of the Bankruptcy Code.

63. **"Reorganized Debtors"** means the Debtors, as re-vested with Property of the Estates to the extent provided in this Plan, on or after the Effective Date.

64. **"Retained Causes of Action"** means the Causes of Action retained by the Reorganized Debtor, including but not limited to the XTO Matter and the JTM Claim.

65. **"Rice"** shall mean Danny Rice.

66. **"Scheduled"** means set forth, stated or listed on the Schedules.

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

67.	**"Schedules"** means the Schedules of Assets and Liabilities and List of Equity Security Holders Filed by the Debtors under the Bankruptcy Rules, as the same have been or may be amended from time to time before the Effective Date.

68.	**"Secured Claim"** means any Claim that is secured by a valid, perfected and unavoidable lien on Property in which the Estates have an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the claimholder's interest in the Estates' interest in such Property or to the extent of the amount subject to setoff, as applicable, and determined under section 506 of the Bankruptcy Code.

69.	**"Small Claim"** means any Claim totaling $2,000 or less or the Claims of those Creditors who elect to reduce their claim to $2,000.

70.	**"Small Claim Creditor"** means a holder of a Small Claim, or a holder of a Claim electing to be treated as a holder of a Small Claim.

71.	**"Unclassified Claim"** means an Administrative Claim and a priority Claim.

72.	**"Unimpaired"** means a Claim or Interest or a Class of Claims or a Class of Interests that is not Impaired.

73.	**"Unsecured Claim"** means any Claim that is not an Administrative Claim, priority Claim, Secured Claim, or a Claim otherwise specifically classified in another Class in this Plan.

74.	**"Unsecured Creditor Amount"** means the sum of $100,000.00

75.	**"Voting Deadline"** means the date and time, as set by an Order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots must be received at the address set forth used for voting on this Plan, as such date may be extended by an order.

76.	**"XTO Matter"** means cause of action no. 348-235990-09, styled XTO Energy, Inc, Plaintiff v. Green Aggregates, Inc. and Congress Materials, LLC, Defendants.

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

# ARTICLE 2

# PROVISIONS FOR PAYMENT OF
# ADMINISTRATIVE EXPENSES

**2.1**    *Payment of Allowed Administrative Expense Claims.*

2.1.1    *Allowed Administrative Expense Claims.*

Subject to Section 2.1.2 below, each Allowed Administrative Expense Claim shall be paid in full, in Cash, by the Reorganized Debtors on the Effective Date or upon such other terms as may be agreed upon by the holder of such Allowed Administrative Expense Claim and the Reorganized Debtors or otherwise established pursuant to an order of the Bankruptcy Court; *provided, however,* that Administrative Expense Claims representing liabilities incurred in the ordinary course of business by any Debtor in Possession shall be paid by the applicable Reorganized Debtor in accordance with the terms and conditions of the particular transactions with the Creditor holding such Claims, the applicable non-bankruptcy law, and any agreements relating thereto or any order of the Bankruptcy Court.

Presidential shall not be required to file a claim in connection with the DIP Facility or the Presidential Claim (pursuant to 11 U.S.C. § 506 or otherwise), but to the extent the Debtors have any objection to the DIP Facility claim amounts any such objections must be filed before the Effective Date.

2.1.2    *Compensation of Professionals.*

All Professionals, who are seeking compensation or who have been compensated from the estates of the Debtors in Possession during the Chapter 11 Cases, or who are seeking compensation from the Estates of the Debtors in Possession or from the Reorganized Debtors for services rendered or reimbursement of expenses incurred from the Petition Date through and including the Effective Date, pursuant to Sections 327, 328, 330, 503(b), or 1103 of the Bankruptcy Code, shall (a) File final applications for allowance of compensation for services and

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

reimbursement of expenses incurred from the Petition Date through the Effective Date by no later than the date that is sixty (60) days after the Effective Date, and (b) if granted such an award by the Bankruptcy Court, be paid in full by the Reorganized Debtors or as otherwise provided in this Plan in such amounts as are Allowed by Final Order of the Bankruptcy Court (i) on the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable, or (ii) when mutually agreed upon by such holder of an Administrative Expense Claim and the Reorganized Debtors.

2.1.3  *Bar Date for Filing Administrative Expense Claims.*

Except with respect to any Administrative Expense Claims for which a different deadline is established by this Article 2, any Administrative Expense Claims must be Filed no later than thirty (30) days after the Effective Date or any such Administrative Expense Claim is and shall be deemed to be forever barred and unenforceable against the Debtors, Reorganized Debtors, their respective Estates, and their assets, and the holders of any such Claims are barred from recovering any distributions under this Plan on account thereof.

Presidential shall not be required to file an Administrative Expense Claim in connection with the DIP Facility including any claim for interest, costs, or fees pursuant to 11 U.S.C. § 506 or otherwise.  However, Presidential shall comply with the attorney fee notice provisions of the DIP Order and unless an objection to Presidential's attorneys' fees has been received as set forth in the DIP Order, no application or claim is necessary to be filed with the court for attorney fees or any other amounts owing under the DIP Facility.

# ARTICLE 3

## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND INTERESTS

**3.1**  *Class 1:* **Presidential Claim**

3.1.1  *Classification.*

Class 1 consists of the Presidential Claim.

3.1.2   *Treatment.*

The Presidential Claim (whether pre-petition or post-petition) shall be paid in full on the Effective Date. The Presidential Claim shall be paid through the Exit Facility and shall include all pre-petition and post-petition interest, costs, fees, and expenses pursuant to Presidential's pre-petition loan documents and DIP Facility.  The Chiron Participation (as that term is defined in the Disclosure Statement) in the Presidential Claim shall be converted to equity in the Reorganized Debtors and shall not be paid by the Exit Facility. The payment of the Presidential Claim shall not release or otherwise discharge any obligations or duties related to any guaranties, participation agreements, security agreements or security interests in connection with the pre-petition Presidential Claim, the DIP Facility, or the Exit Facility.  Presidential's pre-existing liens and lien filings shall be deemed assigned to the provider of the Exit Facility upon the Effective Date and such liens shall be deemed and ordered to be effective, valid, and continuing.

This Claim is secured by collateral which is indicated as Presidential's collateral on the amended <u>Exhibit "D"</u> attached to the Disclosure Statement.

3.1.3   *Impairment and Voting.*

Class 1 is Unimpaired by the Plan.  The holder of the Class 1 Claim is not entitled to vote to accept or reject the Plan.

**3.2**      ***Class 2:***  **Equity Bank**

3.2.1   *Classification.*

Class 2 consists of the Allowed Secured Claim of Equity Bank.

3.2.2   *Treatment.*

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

The Debtors, in complete satisfaction of the Equity Bank Claim, shall pay to Equity Bank the total sum of $504,000.00. This $504,000.00 shall be paid as follows:

a) $300,000.00 to be paid on or before the ninety (90) days after the Effective Date;

b) $204,000.00 to be paid in twenty-three (23) monthly payments of $5,000.00, and a final balloon payment in the twenty-fourth month in the amount of $89,000.00  The first such payment shall be made on the one hundred fiftieth (150th) day after the Effective Date.

Upon receipt of the $300,000.00 payment referenced above, Equity Bank shall release its lien and Claim to the Property as described on Exhibit "J" attached to the Disclosure Statement. Upon the final payment of the $204,000.00 balance, Equity Bank shall release its lien on the balance of its collateral. Payment in the total amount of $504,000.00 shall be in full and final settlement of any Claim possessed by Equity Bank.

3.2.3   *Impairment and Voting.*

The Claim of the Class 2 Creditor is Impaired. The holder of the Class 2 Claim is entitled to vote to accept or reject the Plan.

**3.3**   ***Class 3:*  Continental Bank**

3.3.1   *Classification.*

Class 3 consists of the Allowed Secured Claim of Continental Bank.

3.3.2   *Treatment.*

The holder of this Claim shall retain its security interest until its Class 3 Claim is paid in full.  Beginning thirty (30) days after the Effective Date, the claimant in this Class shall be paid monthly payments of principal and interest based upon the following:

a)   an interest rate of 6.5% simple interest;

b)   an amortization and term of six (6) years; and

c)   a principal balance based upon the Allowed Secured Claim of Continental.

**Deleted:** sixty (60

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

All provisions of the loan documents executed between the Debtor and Continental Bank shall remain in full force and effect with respect to insuring the property that serves as security for the Continental Bank loan and making post Effective Date personal property tax payments with respect to the Continental Bank collateral.

This Claim is secured by collateral which is indicated as Continental Bank's collateral on the amended Exhibit "D" attached to the Disclosure Statement.

3.3.3   *Impairment and Voting.*

Class 3 is Impaired by the Plan. The holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

**3.04    *Class 4:*  Bank of the Ozarks**

3.04.1   *Classification.*

Class 4 consists of the Allowed Secured Claim of Bank of the Ozarks.

3.04.2   *Treatment.*

The holder of this Claim shall retain its security interest until its Class 4 Claim is paid in full. Beginning thirty (30) days after the Effective Date, the claimant in this Class shall be paid monthly payments of principal and interest based upon the following:

a)   an interest rate of 6.5% simple interest;

b)   an amortization and term of six (6) years; and

c)   a principal balance based upon the Allowed Secured Claim of Bank of the Ozarks.

The terms and conditions of the Bank of the Ozarks loan documents shall remain in full force and effect except with respect to the payment terms provided in the Plan, any financial covenant ratios, any default that existed prior to the Effective Date as a result of either the Bankruptcy of the Debtor or a default by a third party who is either a guarantor or co-maker on any loan made to the Debtor, or for which the Debtor is a guarantor.

This Claim is secured by collateral which is indicated as Bank of the Ozark's collateral on the amended Exhibit "D" attached to the Disclosure Statement.

3.04.3 *Impairment and Voting.*

Class 4 is Impaired by the Plan. The holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

**3.05** *Class 5:* **Chiron Equipment Claim**

3.05.1 *Classification.*

Class 5 consists of the Chiron Equipment Claim.

3.05.2 *Treatment.*

The holder of this Claim shall retain its security interest until its Class 5 Claim is paid in full. Beginning sixty (60) days after the Effective Date, the claimant in this Class shall be paid monthly payments of principal and interest based upon the following:

a) an interest rate of 6.5% simple interest;

b) an amortization and term of six (6) years; and

c) a principal balance based upon the Allowed Secured Claim of Chiron Equities, LLC.

This Claim is secured by collateral which is indicated as Chiron Equities, LLC's collateral on the amended Exhibit "D" attached to the Disclosure Statement.

For the avoidance of doubt, nothing contained in the Plan (including but not limited to Section 11.17(b)) shall prohibit Bank of the Ozarks from exercising its rights and remedies in any manner against Chiron Equities, LLC and/or Kyle Tauch with respect to the Chiron Equipment Claim.

3.05.3 *Impairment and Voting.*

Class 5 is Impaired by the Plan. The holders of the Class 5 Claim are entitled to vote to accept or reject the Plan. The Class 5 Creditor, however, is an insider of the Debtors and shall not vote as a Class 16 Creditor or receive any Distributions as a Class 16 creditor.

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

**3.06**     *Class 6:*  **Deere Congress**

Formatted: Font: Not Italic

3.06.1     *Classification.*

Class 6 consists of the Allowed Secured Claim of Deere Congress.

3.06.2     *Treatment.*

The holder of this Claim shall retain its security interest until its Class 6 Claim is paid in full.  Beginning thirty (30) days after the Effective Date, the claimant in this Class shall be paid monthly payments of principal and interest based upon the following:

a)   an annual interest rate of 4.5% simple interest;

b)   an amortization and term of five (5) years; and

c)   a principal balance based upon the Allowed Secured Claim of Deere Congress which shall be equal to $140,500.00.

Deleted: 000

This Claim is secured by collateral which is indicated as Deere Congress' collateral on the amended Exhibit "D" attached to the Disclosure Statement.  Section 11.17(b) shall not apply to the Class 6 claimant.

3.06.3  *Impairment and Voting.*

Class 6 is Impaired by the Plan.  The holder of the Class 6 Claim is entitled to vote to accept or reject the Plan.  The Deficiency Claim of Deere Congress shall be treated as a Class 16 Claim.

**3.07**     *Class 7:*  **Intentionally Left Blank**

**3.08**     *Class 8:*  **U S Bank**

3.08.1     *Classification.*

Class 8 consists of the Allowed Secured Claim of U S Bank.

3.08.2     *Treatment.*

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

{00317317-1}

The holder of this Claim will be paid in accordance with the current loan agreement. Any existing monetary default will be cured and paid on the Effective Date of the Plan.

This Claim is secured by collateral which is indicated as US Bank's collateral on the amended Exhibit "D" attached to the Disclosure Statement.

3.08.3 *Impairment and Voting.*

Class 8 is Unimpaired by the Plan. The holder of the Class 8 Claim is not entitled to vote to accept or reject the Plan.

**3.09     *Class 9:* Patriot Bank**

3.09.1 *Classification.*

Class 9 consists of the Allowed Secured Claim of Patriot Bank which shall be equal to $117.500.00.

3.09.2 *Treatment.*

The Debtors have agreed to surrender the equipment described on <u>Exhibit "H"</u> to the Disclosure Statement to Patriot Bank (the "Released Equipment"). Patriot Bank and the Debtors shall arrange for a time and date for the Released Equipment to be collected by Patriot Bank, and Patriot Bank shall be responsible for collecting the Released Equipment, and for paying any costs associated with obtaining the Released Equipment.

The Debtors shall retain the equipment described on <u>Exhibit "I"</u> (the "Retained Equipment") attached to the Disclosure Statement. Patriot Bank or its representatives may access the Retained Equipment upon twenty-four (24) hours notice for the purposes of appraisal and inspection. The Court has set a hearing to establish the value of the Retained Equipment. The Debtors shall make monthly payments beginning on the fifth (5th) day of the month that is at least one month after the order concerning the valuation of the Retained Equipment is entered,

**Deleted:** Once the Court fixes the value of the Retained Equipment, the

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

with subsequent payments to be made on the fifth (5th) day of each month thereafter. Such payments shall be based upon:

a) an Allowed Secured Claim of $117,500.00 ;

b) an interest rate of 6.0% simple interest; and

c) a six (6) year amortization schedule.

The Debtors shall make the above described monthly payments within five (5) days of the date due. Should the Debtors fail to make monthly payments within five (5) days of the date due, Patriot Bank shall send a notice to: (a) Congress Sand & Gravel, LLC, Debtor(s), 1401 Cates Street, Suite 201, Bridgeport, Texas 76426, (b) Congress Sand & Gravel, LLC, Debtor(s) 22 Waugh Drive, Suite 320  Houston, Texas 77007, (c) Douglas S. Draper, Attorney at Law, Heller, Draper, Hayden, Patrick & Horn, LLC, 650 Poydras Street, Suite 2500, New Orleans, Louisiana 70130, and (d) and email copy of the notice to ddraper@hellerdraper.com, indicating such a default, and after the expiration of ten (10) days from transmittal of such notice, the automatic stay with respect to the Retained Equipment will terminate, without further notice or hearing before the Court, if the default is not cured within that same time period. Upon the occasion of the second (2nd) default by the Debtors to make a monthly payment, the stay will automatically terminate on the sixth (6th) day following the date on which the payment was due, without further notice or hearing before the Court.

The Agreed order submitted by Patriot, to be entered by this Court resolving the Motion for Valuation [P-265], is also hereby incorporated by reference herein, and to the extent the Plan and the submitted Agreed order are inconsistent, the submitted Agreed order shall control.

3.09.3 *Impairment and Voting.*

**Deleted:** a) the value determined by the Court for the Retained Equipment;¶

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

The Class 9 claimant is Impaired by the Plan. The holder of the Class 9 Claim is entitled to vote on the Plan. The Deficiency Claim of Patriot Bank in the amount of $263,795.00 shall be treated as a Class 16 Claim.

3.10    *CLASS 10*: **Intentionally Left Blank**

3.11    *CLASS 11:* **Claim of the City of Garland**

3.11.1    *Classification.*

Class 11 shall consist of the Claim of the City of Garland.

3.11.2    *Treatment*

The holder of this Claim shall retain its security interest until its Class 11 Claim is paid in full. Beginning sixty (60) days after the Effective Date, the claimant in this Class shall be paid monthly payments of principal and interest based upon the following:

a)  an interest rate of 5.0% simple interest;

b)  an amortization and term of six (6) years; and

c)  a principal balance based upon the Allowed Secured Claim of the City of Garland.

This Claim is secured by collateral which is indicated as the City of Garland's collateral on the amended Exhibit "D" attached to the Disclosure Statement.

3.11.3    *Impairment and Voting.*

The Class 11 Creditor is Impaired. The holder of the Class 11 Claim is entitled to vote to accept or reject the Plan.

**3.12    *CLASS 12:* Claim of Ford**

3.12.1    *Classification.*

Class 12 shall consist of the Allowed Secured Claim of Ford Motor Credit.

3.12.2    *Treatment.*

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

In satisfaction of the Allowed Secured Claim of Ford Motor Credit, the Debtors will surrender possession of all of the vehicles in its possession which serve as collateral for the Ford Motor Credit Claim, including:

a) 2006 Ford F250; VIN: 1FTSW21P56EC82758

b) 2008 Ford F250; VIN: 1FTSX215X8EA83056

c) 2008 Ford F250; VIN: 1FTSW21R48EB61532.

The automatic stay has already terminated with regard to the following vehicles: 2008 Ford F250, vehicle identification number 1FTSW21R48EB61532, account number ending in 2890; 2008 Ford F250, vehicle identification number 1FTSX215X8EA83056, account number ending in 5886; 2006 F250, vehicle identification number 1FTSW21P56EC82758, account number ending in 5427; and 2007 F250, vehicle identification number 1FTSX21567EB48130, account number ending in 3660. At or prior to the Confirmation Hearing, the Debtors will provide Ford's counsel with the location of these vehicles and contact information to allow Ford to obtain possession of these vehicles. Following the sale by Ford of these vehicles, Ford is authorized to amend its proofs of claim for its deficiency balances on each vehicle, if any. Additionally, Ford may pursue any and all guarantors for the collection of any deficiency balances owed to it.

Debtors authorize any insurer on the vehicle described as a 2007 F150, vehicle identification number 1FTVX14577NA77524 ("Vehicle") to release to Ford any policy of insurance relating to the Vehicle and to release and disclose to Ford any other information regarding damage done to the Vehicle, claims for payment of insurance proceeds related to the Vehicle, and payment of any insurance proceeds to any person or entity related to the Vehicle. Debtors agree to execute any documents required by any insurer or their agent to obtain the release of the information and documents specified in the preceding sentence. Debtors authorize any insurer to discuss any claim for damages on the Vehicle with Ford. Debtors assign to Ford

any claim they may have against any insurer on the Vehicle relating to any insurance claim with respect to the Vehicle. Debtors agree to execute any documents required by any insurer or their agent to evidence the assignment of such claims. Within twenty days from the entry of this Confirmation Order, Debtors will provide to Ford any documents in the possession of the Debtors regarding any insurance claim made with respect to the Vehicle and any monies received as a result of any such claim. Ford may pursue any and all guarantors for the collection of any deficiency balances owed on the Vehicle.

The Debtors will pay to Ford Motor Credit on the Effective Date any past due adequate protection payments outlined in the Agreed Order Regarding Adequate Protection and the Automatic Stay [P-290].

3.12.3 *Impairment and Voting.*

The Class 12 Creditor is Impaired. The holder of the Class 12 Claim is entitled to vote to accept or reject the Plan. The Deficiency Claim of Ford Motor Credit shall be treated as a Class 16 Claim.

**3.13** *CLASS 13:* **Claim of Chrysler**

3.13.1 *Classification.*

Class 13 shall consist of the Allowed Secured Claim of Chrysler.

3.13. 2 *Treatment.*

The Allowed Secured Claim of this Creditor shall be paid in full on the Effective Date.

Chrysler has a perfected security interest in a 2006 Dodge Ram 1500, vehicle identification number 1D7HU16N26J232950 ("Ram"). Chrysler shall have an Allowed Secured Claim in the amount of $5,748.80 as of June 20, 2011. Chrysler shall retain its lien on the Ram until all amounts due to Chrysler pursuant to its contract with Debtors ("Contract"), including interest as it continues to accrue, are paid in full. The debt owed to Chrysler will be paid, in full, on the Effective Date. Payment shall be made to the payment address given for Chrysler on its

proof of claim. Debtors shall maintain insurance on the Ram, listing Chrysler as loss payee, until the payment is made.

Despite any other provisions in the Plan regarding default or an injunction, if Debtors fail to make the required payment to Chrysler or fail to maintain the required insurance on the Ram, Chrysler will be entitled to repossess and sell the Ram and exercise its state law and contractual remedies without further order of the Bankruptcy Court and without the necessity of sending a notice to the Debtors of the intention to accelerate the debt or of the intention to repossess the Ram or of any right to cure. Chrysler may seek all writs and other state court orders necessary to obtain possession of the Ram in the event it is not voluntarily surrendered by Debtors or any other party in possession.

This Claim is secured by collateral which is indicated as Chrysler Financial's collateral on the amended Exhibit "D" attached to the Disclosure Statement.

3.13 .3 *Impairment and Voting.*

This Creditor is Unimpaired and shall not be entitled to vote to accept or reject the Plan.

**3.14**    ***CLASS 14:*** **Claim of Oppenheimer, Blend, Harrison & Tate and Green Aggregates; U.S. Trustee Fees**

3.14.1 *Classification.*

Class 14 shall consist of the Claims of Oppenheimer, Blend, Harrison & Tate and Green Aggregates US Trustee fees.

3.14.2 *Treatment.*

The holders of these Claims will be paid in twelve (12) equal monthly installments with no interest. The first installment will be paid thirty (30) days after the Effective Date.

3.14.3 *Impairment and Voting.*

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

The holders of Claims in Class 14 are Impaired. The holders of Class 14 Claims are entitled to vote to accept or reject the Plan.

**3.15    *CLASS 15:* Unsecured Small Claims Creditors**

3.15.1 *Classification.*

Class 15 shall consist of the Claims of Small Claims Creditors.

3.15.2  *Treatment.*

The holders of the Small Claims (those with Claims of $2,000 or less or those Creditors who elect to reduce their Claim to $2,000) in Class 15 will be paid in full in two (2) equal installments. Holders of Allowed Claims in excess of $2,000 may elect to be treated as a holder of a Small Claim, and will be paid a maximum of $2,000 in two equal installments. Holders of Small Claims or those electing to be treated as holders of Small Claims will be paid their first installment payment one hundred eighty (180) days after the Effective Date, with the second installment paid one hundred eighty (180) days thereafter.

3.15.3 *Impairment and Voting.*

The holders of Claims in Class 15 are Impaired. The holders of Class 15 Claims are entitled to vote to accept or reject the Plan.

**3.16    *CLASS 16*: Unsecured Creditors**

3.16.1 *Classification.*

Class 16 shall consist of the holders of Allowed Unsecured Claims and the Deficiency Claims of the Debtors' secured creditors less and except for unsecured claims held by Insiders of the Debtors.

3.16.2 *Treatment.*

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

The holders of Claims in Class 16 shall share Pro Rata in the Unsecured Creditor Amount. The Class 16 Creditors shall receive their Pro Rata share of the following quarterly payments based upon the following:

a) a principal amount equal to the Unsecured Creditor Amount;

b) an amortization of ten (10) years;

c) a term of five (5) years; and

d) the first payment shall be made ninety (90) days after the Effective Date.

3.16.3 *Impairment and Voting.*

The holders of Claims in Class 16 are Impaired. The holders of Class 16 Claims are entitled to vote to accept or reject the Plan.

3.17 *CLASS 17:* **Intentionally Left Blank**

3.18 *CLASS 18:* **Intentionally Left Blank**

3.19 *CLASS 19:* **SureTec Insurance Co. Claim**

Class 19 shall consist of the Allowed Claim of SureTec Insurance Co.

3.19.2 *Treatment.*

The holder of this Claim shall retain any security interest until its Class 19 Claim is paid in full. The claimant in this Class shall be paid based upon monthly payments of principal and interest based upon the following:

a) an interest rate of 6.0% simple interest;

b) an amortization of ten (10) years;

c) a payments term of five (5) years;

d) a balloon payment at the end of the five (5) year term;

e) a principal balance based upon the Allowed Secured Claim of SureTec Insurance Co.; and

f) the first payment shall be made thirty (30) days after the Effective Date.

Deleted: ballon

Deleted: sixty (60

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

This Claim is secured by collateral which is indicated as SureTec Insurance Co.'s collateral on the amended Exhibit "D" attached to the Disclosure Statement.

3.19.3 *Impairment and Voting.*

The holder of the Claim in Class 19 is Impaired. The holder of the Class 19 Claim is entitled to vote to accept or reject the Plan.

3.20 **CLASS 20: GE Capital Corporation**

Class 20 shall consist of the Allowed Claim of GE Capital Corporation.

3.20.2 *Treatment.*

The holder of Claim 20 shall retain any security interest until its Class 20 Claim is paid in full. The claimant shall be paid based upon monthly payments of principal and interest based upon the following:

a) an interest rate of 6.0 % interest;

b) an amortization and term of five (5) years;

c) a principal balance equal to the Allowed Secured Claim of GE Capital Corporation which is equal to $367,368.40 as set forth in paragraph 1 of the *Agreed Order on Motion of General Electric Capital Corporation to Require Assumption or Rejection of Executory Contract* (Docket Number 232) ( the "GECC Agreed Order"); and

d) the first payment shall commence thirty (30) days after the Effective Date.

The Debtors will additionally make monthly payments of adequate protection in the amount of $7,102.26 until the monthly payments described immediately above commence.

The Claim is secured by collateral which is indicated as GE Capital Corporation's collateral on the amended Exhibit "D" attached to the Disclosure Statement.

Section 11.17(b) shall not apply to the claim of the Class 20 creditor, GE's unsecured claim under Class 16, or the claims of Colonial Pacific Leasing Corporation ("Colonial"), a GE affiliate, against non-debtor entities.

**Deleted:** simple

**Deleted:** based upon

**Deleted:**

**Deleted:** This

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

The GECC Agreed Order, including the default provisions set forth in paragraphs 8 and 9 therein, shall remain in full force and effect, and is hereby adopted herein as a part of this Plan.

3.20.3  *Impairment and Voting.*

The holder of the Claim in Class 20 is Impaired. The holder of the Class 20 Claim is entitled to vote to accept or reject the Plan.

3.21  *CLASS 21:*  **Intentionally Left Blank**

3.22  *CLASS 22*: **Unsecured Claims Held by Insiders of the Debtors**

3.22.1  *Classification.*

Class 22 shall consist of the Insider Claims.

3.22.2  *Treatment.*

The holders of Claims in Class 22 shall receive 100% of the Interests in the Reorganized Debtors in exchange for the debt due to such insiders.

3.22.3  *Impairment and Voting.*

The holders of the Claims in Class 22 are Impaired. The holders of Class 22 Claims are entitled to vote to accept or reject the Plan.

**3.23**  *CLASS 23:*  **Equity Holders in the Debtors**

3.23.1  *Classification.*

Class 23 shall consist of the holders of Interests in the Debtors.

3.23.2  *Treatment.*

The holders of the Interests in the Debtors shall have their interests cancelled.

3.23.3  *Impairment and Voting.*

Inasmuch as Class 23 shall receive no distributions under the Plan the holders of Class 23 interests are presumed to have rejected the Plan.

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

**4.1** ***Impaired Classes Vote.*** Each holder of a Claim or Interest in an Impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order. The Classes that are Unimpaired by the Plan are classes 1, 8, and 13. All other Classes, excluding those intentionally left blank, are Impaired by the Plan.

**4.2** ***Acceptance by Impaired Classes of Claims***. Acceptance of this Plan by any Impaired Class entitled to vote shall be determined in accordance with the Bankruptcy Code, the Bankruptcy Rules, Local Rules, and any voting procedures order entered by the Bankruptcy Court.

**5.3** ***Designation of Classes Entitled to Vote.*** The holders of Claims in all Classes that are Impaired and are to receive Distributions under the Plan are entitled to vote on the Plan.

**5.4** ***Nonconsensual Confirmation***. With respect to any Impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan, the Debtors will request that the Bankruptcy Court confirm this Plan by cramdown with respect to any such non-accepting Class or Classes at the Confirmation Hearing, and the filing of this Plan shall constitute a motion for such relief.

**ARTICLE 5**

**CONTRACTS AND UNEXPIRED LEASES**

**5.1** ***Assumption***. Each executory contract or unexpired lease of the Debtors that has not expired by its own terms before the Effective Date or previously been assumed by the applicable Debtor in Possession pursuant to an order of the Bankruptcy Court, shall be assumed

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

by the applicable Debtor as of the Effective Date pursuant to Sections 365 and 1123 of the Bankruptcy Code, except for any executory contract or unexpired lease (i) that is listed on a "Schedule of Executory Contracts and Unexpired Leases to be Rejected" (to be Filed on or before the day that is ten (10) days prior to the Confirmation Hearing), (ii) that has been previously rejected by the Debtor in Possession pursuant to an order of the Bankruptcy Court, (iii) as to which a motion for rejection of such executory contract or unexpired lease is filed prior to the Effective Date, (iv) that is deleted from the Schedule of Executory Contracts and Unexpired Leases to be Assumed prior to the Effective Date, or (v) added to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" prior to the Effective Date. The Debtors are additionally filing a "Schedule of Executory Contracts and Unexpired Leases to be Assumed", and have filed a *Motion for an Order Pursuant to Section 365(a) of the Bankruptcy Code Authorizing the Debtor to Assume Certain Leases of Nonresidential Real Property* [P-203] indicating their intent to assume certain leases. Nothing in the Plan, any Exhibit to the Plan, or any document executed or delivered in connection with the Plan or any such Exhibit creates any obligation or liability on the part of the Debtors, the Reorganized Debtors, or any other person or entity that is not currently liable for such obligation, with respect to any executory contract or unexpired lease except as may otherwise be provided in the Plan.

Any executory contract or unexpired lease assumed pursuant to the Plan shall be and hereby is assumed by the applicable Debtor as of the Effective Date and shall be fully enforceable by the applicable Debtor in accordance with its terms thereof, and shall include all written modifications, amendments, supplements of said executory contract or unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all written agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights *in rem* related to such

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

premises.  Listing a contract or lease on the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" is not deemed an admission by the applicable Debtor or Reorganized Debtor that such contract is an executory contract or unexpired lease or that the Debtor(s) or Reorganized Debtor(s) have any liability thereunder.

The Debtors reserve the right at any time before the Effective Date to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to: (a) delete any executory contract or unexpired lease listed on the "Schedule of Executory Contracts and Unexpired Leases to be Rejected", thus providing for its assumption under the Plan, or (b) add any executory contract or unexpired lease to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected", thus providing for its rejection under the Plan.  The Debtors shall provide notice of any such amendment of the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to the parties to the affected executory contract or unexpired lease, and the Office of the U.S. Trustee.

The Debtors reserve the right at any time before the Effective Date to amend the Schedule of Executory Contracts and Unexpired Leases to be Assumed to: (a) delete any executory contract or unexpired lease listed on the schedule, thus providing for its rejection, or (b) add any executory contract or unexpired lease to the schedule. The Debtors shall provide notice of any amendment of the schedule to the parties to the affected executory contract or unexpired lease, and the Office of the U.S. Trustee.

### 5.2 *Cure Payments, Compensation for Pecuniary Loss, and Adequate Assurance*.

All payments, including any and all cure payments, adequate assurance or compensation for actual pecuniary loss, that are required to be paid or provided by Section 365(b)(1)(A)-(C) of the Bankruptcy Code (collectively, all cure payments, and any and all provisions for adequate assurance and/or compensation for actual pecuniary loss due or required to be paid under Section 365(b)(1)(A)-(C) of the Bankruptcy Code, the  "Cure Payments") for any executory contract or

unexpired lease that is being assumed under the Plan, unless disputed by the Debtors, shall be made in accordance with the Plan or a schedule of cure payments that may be filed on or before the hearing on the Disclosure Statement that accompanies this Plan. **Any non-Debtor party to any executory contract or unexpired lease to be assumed under the Plan that objects to assumption of the executory contract or unexpired lease or believes that a Cure Payment is due in connection with such assumption must File a written objection to the assumption of such executory contract or unexpired lease with no Cure Payment and state in the written objection the grounds for such objection and specifically set forth the amount of any request for a Cure Payment by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan.** Unless the non-Debtor party to any executory contract or unexpired lease to be assumed Files and serves on the respective Debtor and its counsel an objection to assumption of such executory contract or unexpired lease for any reason, or asserting that a Cure Payment is required or owed in connection with such assumption, by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan, then the executory contracts and unexpired leases shall be assumed, and any default then existing in the executory contract and/or unexpired lease shall be deemed cured as of the Effective Date, and there shall be no other cure obligation or Cure Payment due or owed by anyone, including the Debtors and the Reorganized Debtors, in connection with such assumption of the executory contract or unexpired lease. Any Claims for Cure Payments not Filed as part of a written objection to the proposed assumption within such time period will be forever barred from assertion against the applicable Debtor, its Estate, and its assets, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof. In the event of an objection to the assumption of executory contracts or unexpired leases regarding the amount of any Cure Payment, or the ability of the applicable Reorganized Debtor to provide adequate assurance of future performance or any other matter pertaining to assumption, (a) the

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

Bankruptcy Court will hear and determine such dispute at the Confirmation Hearing, and, (b) in the discretion of the applicable Debtor, the Debtor (i) may assume such disputed executory contract or unexpired lease by curing any default or providing adequate assurance in the manner determined by the Bankruptcy Court, or (ii) the Debtor may reject such executory contract or unexpired lease as of the Effective Date. The Reorganized Debtor shall make any Cure Payment on the later of the Effective Date and the date such Cure Payment is due pursuant to a Final Order or this Plan, provided however that the applicable Reorganized Debtor shall have five (5) Business Days after any order determining the amount of a disputed Cure Payment becomes a Final Order in which to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to provide for the rejection of such executory contract or unexpired lease and, in such an event, such executory contract or unexpired lease shall be deemed rejected as of the Effective Date.

*5.3* **Effect of Confirmation Order on Executory Contracts and Unexpired Leases.** Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of such assumptions pursuant to Section 365(a) and 1123(b)(2) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the applicable Debtor, its Estate, and all parties in interest. In addition, the Confirmation Order shall constitute a finding of fact and conclusion of law that (i) there are no defaults of the Debtors, no Cure Payments owing (including that there is no compensation due for any actual pecuniary loss), (ii) there is adequate assurance of future performance with respect to each such assumed executory contract or unexpired lease, (iii) such assumption is in the best interest of the applicable Debtor and its Estate, (iv) upon the Effective Date, the assumed executory contracts or unexpired leases constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof, and (v) the counter party to each assumed executory contract or unexpired lease is required to and ordered to perform under and honor the terms of the assumed executory contract

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

or unexpired lease. All executory contracts and unexpired leases assumed under the Plan or during the Chapter 11 cases constitute valid contracts and leases, as applicable, enforceable by the Debtors against the non-Debtor counterparties regardless of any cross-default or change of control provisions in any contracts or leases assumed or rejected under the Plan or during the Chapter 11 cases.

Subject to the occurrence of the Effective Date, the Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection as of the Effective Date of all executory contracts and unexpired leases which are not assumed under this Plan, with the rejection effective as of the day before the Petition Date, as being burdensome and not in the best interest of the estates.

**5.4** *Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan*.  Any Claims for damages arising from the rejection of an executory contract or unexpired lease under this Plan must be Filed within thirty (30) days after the Effective Date or, with respect to any executory contracts or unexpired leases which are rejected after the Effective Date by amendment to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected", no later than thirty (30) days after the date of such amendment to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected", or such Claims will be forever barred and unenforceable against the Debtors, Reorganized Debtors, and their assets, and the holders of any such Claims are barred from receiving any Distributions under the Plan.

## ARTICLE 6

## DISTRIBUTIONS UNDER THE PLAN

**6.1** *Distributions under the Plan*.  The Reorganized Debtors or, at the option of the Reorganized Debtors, any distribution agent of the Reorganized Debtors, shall make all Distributions to the holders of Allowed Claims that are required under this Plan.  Each

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

Distribution shall be made on a distribution date. Distributions to be made on the distribution date shall be deemed actually made on the distribution date if made on the distribution date or the first Business Day thereafter. If any litigation now pending is resolved by Final Order or settlement, and any of the Debtors are ordered to pay any sums to the successful litigant, then such party shall become a Creditor, and shall share in Distributions to the appropriate Class. Whenever any Distribution to be made under this Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without the accrual of any interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

6.2     ***Record Date for Voting on Plan***. The transfer registers for each of the Classes of Claims and Interests as maintained by the Debtors or any third party, including the voting agent, shall be deemed closed on the date of entry of an order of the Bankruptcy Court approving the Disclosure Statement (or, with respect to any Class, any later date to which the Debtors agree) for purposes of voting on the Plan, and there shall be no further changes to reflect any new record holders of any Claims or Interests for purposes of voting on the Plan.

6.3     ***Delivery of Distributions***. Except as otherwise provided in this Plan, Distributions to a holder of an Allowed Claim or Allowed Interest shall be made to such address to which the Debtor is given written notice, or if no notice is provided, at the address of such holder as indicated on the Debtors records. In the event that any such Distribution is returned as undeliverable, the Reorganized Debtors shall use reasonable efforts to determine the current address of the applicable holder, and no Distribution to such holder shall be made unless and until the Reorganized Debtors have determined such then current address, *provided, however*, that if any Distribution remains unclaimed after the first anniversary after Distribution, such Distribution shall be deemed unclaimed property pursuant to Section 347(b) of the Bankruptcy Code and shall become vested in the Reorganized Debtors. In such event, the Claim of the holder for such Distribution shall no longer be deemed to be Allowed, and such

holder shall be deemed to have waived its rights to such Distribution under this Plan pursuant to Section 1143 of the Bankruptcy Code, shall have no further Claim or right thereto, and shall not participate in any further Distributions under this Plan with respect to such Claim.  Checks issued by the Reorganized Debtors in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof.

**6.4**     *Third Party Agreements*.  The Distributions to the various Classes of Claims or Interests hereunder will not affect the right of any entity to levy, garnish, attach, or employ any other legal process with respect to such Distributions by reason of any claimed subordination or lien priority rights or otherwise.  All subordination agreements entered into by any parties in interest shall be enforceable to the extent permitted by applicable law, and all Distributions and payments made pursuant to the Plan shall be subject to applicable law.

**6.5**     *Manner of Payment Under the Plan*.  At the option of the Reorganized Debtors, any payment in Cash to be made under the Plan may be made by check or wire transfer from a domestic bank or as otherwise required by applicable agreement.

**6.6**     *No Fractional Distributions*.  No fractional dollars shall be distributed under the Plan.  For purposes of distributions, Cash distributions shall be rounded up or down, as applicable, to the nearest whole dollar.

**6.7**     *Withholding and Reporting*.  The Reorganized Debtors shall comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions shall be subject to such withholding and reporting requirements.

**6.8**     *Disputed Claims Reserve.* On the Effective Date, the Reorganized Debtors shall establish a Disputed Claims reserve account to pay any Disputed Claims in the event such Claims become Allowed or a portion of such Claims become Allowed, after a Final Order. The Debtors shall deposit into this account an amount equal to the disbursement that such claimant would be entitled to or would receive if its Claim were Allowed in full.  If such claimant's

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

Disputed Claim is disallowed in its entirety, then all funds maintained in the Disputed Claims reserve on account of such Disputed Claim shall immediately be transferred to the account of the Debtors and the Debtors shall cease making any further distributions to the Disputed Claims reserve on account of the Disputed Claim. If such claimant's Disputed Claim is allowed in its entirety, then all funds maintained in the Disputed Claims reserve for the benefit of this Disputed Claim shall immediately be turned over to the claimant. If a Disputed Claim is only partially Allowed, then the claimant shall receive immediate disbursement equal to the amount that this claimant would have received based upon the portion of the Claim that was Allowed. The Debtors shall then commence making direct payments to the claimant in such amount equal to the amount that the claimant is entitled to pursuant to the confirmed Plan.

## ARTICLE 7

## MEANS FOR EXECUTION AND

## IMPLEMENTATION OF THE PLAN

**7.1** *Generally*. Upon confirmation of this Plan, the Debtors shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or contemplated by this Plan. In connection with the occurrence of the Effective Date, the Reorganized Debtors are authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**7.2** *Entity Action.* The Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtors and Reorganized Debtors, to effectuate and further evidence the terms and conditions of this Plan and

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

any notes or securities issued pursuant to this Plan, or to transfer, sell or assign any rights, Property, or assets of the Debtors.

**7.3** **_Status of Existing Liens of Priority Tax Claims, Property Tax Claims, Property Lenders' Secured Claims, Equipment and Property Lenders' Secured Claims, and Equipment Lenders' Secured Claims._** Unless otherwise provided in this Plan, on the Effective Date, all existing liens held by holders of Priority Tax Claims, Allowed Secured Claims, shall retain the same ranking, validity, priority and extent that existed on the Petition Date unless such Secured Claim is paid in full under the Plan or an Order is entered that such creditor does not possess either an Allowed Priority Tax Claim or an Allowed Secured Claim. . Section 552 of the Bankruptcy Code shall not apply to limit any of liens and security interests possessed by holders of Allowed Secured Claims. The Debtor however may use 11 USC 552 to reduce the amount of any Allowed Secured Claim. All other liens and encumbrances shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule.

Notwithstanding any other provisions in the Plan, if a Creditor has a prepetition lien on collateral that attaches to subsequently acquired property, such as inventory, equipment, furniture, fixtures, or other generally described collateral, then such Creditor's lien shall continue to attach to the such after-acquired or subsequently-acquired property to the extent permitted by applicable Bankruptcy law or if applicable non-bankruptcy law. However, any purported liens of any Allowed Priority Tax Claimant or the claims creditors holding Allowed Secured Claims that could potentially attach to subsequently acquired property, shall not and will not attach to after acquired property with priority over the Exit Facility in connection with the Reorganized Debtors' accounts, accounts receivable, payment intangibles, instruments, chattel paper, investment property, deposit accounts, inventory,

Deleted: property tax Claims, property lenders'

Deleted: equipment and property lenders' Secured Claims, and equipment lenders' Secured Claims on the Debtors' assets

Deleted: the holders of Secured Claims

Deleted: tax claimants or other secured Creditors for pre-petition Claims, including the United States or other purported secured tax claimant,

Deleted: Congress Materials' leasehold interests, a Terex Haul Truck TA 27, Serial No. a8681103 (the "Terex Truck"), and any other assets not subject to a pre-petition lien.

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

For further avoidance of any doubt, confirmation of the Plan provides Presidential *and any entity providing an Exit Facility with* (1) a senior priority lien on all accounts, accounts receivable, payment intangibles, instruments, chattel paper, investment property, deposit accounts, inventory, Congress Materials' leasehold interests, the Terex Truck, and any other assets not subject to a pre-petition lien*s*, and (2) a junior lien on any other assets subject to a pre-petition senior lien.

**7.4** ***Plan Documents.*** The Plan and all documents to implement this Plan and the transactions contemplated herein shall be in form and substance satisfactory to the Reorganized Debtors.

**7.5** ***Effectuating Documents and Further Transactions.*** The Debtors and the Reorganized Debtors shall be authorized on behalf of the Debtors and the Reorganized Debtors to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions as may be necessary or appropriate, for and on behalf of the Debtors and the Reorganized Debtors, to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

**7.6** ***No Dividends, Loans or Other Disbursements to Interests.*** There shall be no dividends, loans or other disbursements, other than tax distributions and compensation and benefits for services actually rendered, with respect to Interests in the Reorganized Debtors until all Allowed Claims under this Plan have been paid in full. However, in the event there are any adverse tax consequences toward the member(s) resulting in any tax liabilities owed by such member(s), then the Debtors shall be responsible for the satisfaction of such tax liabilities.

**7.7** ***Management of the Reorganized Debtors.*** The current management of the Debtors shall become the management of the Reorganized Debtors.

**7.8** ***Exit Facility.*** The Debtors and Presidential (or another lender) will negotiate and enter into an Exit Facility mutually acceptable to each. The Debtors are authorized to enter into

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

the Exit Facility and execute all necessary documents in connection with the Exit Facility. The Exit Facility may contain conditions precedent acceptable to Presidential in its sole discretion, including agreement and execution of such items as guaranties, participations and other matters. The Exit Facility (notwithstanding any other purported pre-petition liens on any assets of the Debtors) shall have (1) a senior priority lien on all accounts, accounts receivable, payment intangibles, instruments, chattel paper, investment property, deposit accounts, inventory, Congress Materials' leasehold interests, the Terex Truck, and any other assets not subject to a pre-petition lien and (2) a junior lien on any other assets subject to a pre-petition senior lien.

Execution of the Exit Facility shall not release or otherwise discharge any other party of any obligations or duties related to any guaranties, participation agreements, security agreements or security interests in connection with the pre-petition Presidential Claim, the DIP Facility, or the Exit Facility.

## ARTICLE 8

## RESOLUTION OF DISPUTED CLAIMS AND INTERESTS

**8.1** *Objections to Claims and Interests; Prosecution of Disputed Claims and Interests*. The Debtors and, after the Effective Date, the Reorganized Debtors, shall have the exclusive right to object to the allowance, amount or classification of Claims and Interests asserted in the Chapter 11 cases, and such objections may be litigated to Final Order by the Debtors or Reorganized Debtors, as applicable, or compromised and settled in accordance with the business judgment of the Debtors or Reorganized Debtors, as applicable, without further order of the Bankruptcy Court. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims and Interests shall be Filed no later than one hundred and twenty (120) days after the Effective Date, subject to any extensions granted pursuant to further order of the Bankruptcy Court, which extensions may be obtained by the Reorganized Debtors without notice upon *ex parte* motion.

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

**8.2** *Estimation of Disputed Claims and Interests*.   The Debtors and, after the Effective Date, the Reorganized Debtors, may at any time request that the Bankruptcy Court estimate for all purposes, including distribution under this Plan and including payments to the Disputed Claims reserve account, any Disputed, contingent or unliquidated Claim or Interest pursuant to Section 502(c) of the Bankruptcy Code, whether or not the Debtors or the Reorganized Debtors have previously objected to such Claim or Interest.   The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest at any time, including, without limitation, during the pendency of an appeal relating to such objection.

**8.3** *No Distribution on Account of Disputed Claims and Interests.*   Notwithstanding anything else contained in this Plan, except with respect to any undisputed, non-contingent and liquidated portion of general Unsecured Claims, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order.   The Reorganized Debtors shall set aside or reserve a portion of the consideration payable to the holders of Allowed Claims and Allowed Interests in a particular Class to be held in the Disputed Claims reserve for such Class in an amount sufficient to pay to the holders of all Disputed Claims in such Class the full distributions they may be entitled to if their respective Claims and Interests were ultimately to be allowed in full by Final Order.

# ARTICLE 9

## EFFECT OF CONFIRMATION OF PLAN

**9.1** *Vesting of Assets and Retained Causes of Action*.   Except as otherwise provided herein, on the Effective Date, pursuant to Section 1141(b) of the Bankruptcy Code, all assets of the Debtors in Possession and their respective Estates shall vest in the Reorganized Debtors free and clear of any and all Claims, liens, Interests, and other interests, charges and encumbrances, except as otherwise expressly provided in this Plan or in the Confirmation Order. From and after

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

the Effective Date, the Reorganized Debtors may operate their businesses and may own, use, acquire and dispose of assets free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if the Chapter 11 cases had never been filed. The Debtors will not pursue any Avoidance Action Claims for affirmative recoveries or assert Avoidance Action Claims against the holders of general Unsecured Claims with respect to such general Unsecured Claims, but reserve all such Avoidance Actions and Claims for defensive purposes and may assert Avoidance Action Claims as defenses against other Claims filed against any of the Debtors. For avoidance of any doubt, the assets of the Reorganized Debtors will remain encumbered by the liens and Claims of Presidential and such liens and Claims shall be deemed and ordered to be valid, effective, and continuing.

Except as otherwise specifically provided in this Plan, the Reorganized Debtors shall retain all rights and are authorized to commence and pursue, as the Reorganized Debtors deem appropriate, any and all claims and Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 cases, and including but not limited to, the claims and Causes of Action specified in the Plan. Due to the size and scope of the Debtors' business operations and the multitude of business transactions therein, there may be other claims and Causes of Action that currently exist or may subsequently arise, all of which other claims and Causes of Action shall revest in the Reorganized Debtors. The Reorganized Debtors do not intend, and it should not be assumed that because any existing or potential claims or Causes of Action have not yet been pursued by the Debtors, that any such claims or Causes or Action have been waived or will not be pursued. Under this Plan, the Reorganized Debtors retain all rights to pursue any and all claims and Causes of Action to the extent the Reorganized Debtors deem appropriate (under any theory of law or equity, including, without limitation, the Bankruptcy Code and any applicable local, state, or federal law, in any court or other tribunal, including,

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

without limitation, in an adversary proceeding filed in the Chapter 11 cases) except as otherwise specifically provided in this Plan.

**9.2**   ***Binding Effect.***  Subject to the occurrence of the Effective Date, on and after the occurrence of the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or an Interest in any of the Debtors and such holder's successors and assigns, whether or not such holder's Claim or Interest is Impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a Distribution under the Plan.

**9.3**   ***Discharge of the Debtors.***  Except as otherwise specifically provided in this Plan or in the Confirmation Order, the rights afforded in this Plan and the treatment of the Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in the Debtors, the Debtors in Possession, the Reorganized Debtors or the assets, Properties, or Property of the Debtors, the Debtors in Possession or the Reorganized Debtors of any nature whatsoever, including any interest accrued on any Claim from and after the Petition Date. Except as expressly otherwise provided herein or in the Confirmation Order, on the Effective Date, all Claims arising before the Effective Date (including those arising under Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code) against the Debtors and the Debtors in Possession (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtors, or any conduct for which any of the Debtors may be deemed to have strict liability under any applicable law), and all Interests, shall be irrevocably satisfied, discharged, cancelled and released in full.

For the avoidance of doubt, the Reorganized Debtors shall be responsible only for (a) those payments and Distributions expressly provided for or due under this Plan and (b) Claims and Interests that are not canceled and discharged pursuant to specific and express provisions of this Plan, and then only to the extent and in the manner specifically and expressly provided in

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

this Plan.  All Persons are precluded and forever barred from asserting against the Debtors, the Debtors in Possession, or the Reorganized Debtors, or the assets, Properties, or Property of the Debtors, the Debtors in Possession or the Reorganized Debtors of any nature whatsoever any Claims or Interests based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date, except for (a) those payments and Distributions expressly due under this Plan and (b) Claims and Interests, if any, that are not canceled and discharged under the Plan, but instead survive pursuant to specific and express provisions of this Plan, and then only to the extent and in manner specifically and expressly provided in the Plan.

**9.4**     ***Indemnification Obligations***.  Subject to the occurrence of the Effective Date, the obligations of the Debtors to indemnify, reimburse or limit liability of any person who is serving or has served as one of its directors, officers, employees, or agents by reason of such person's prior or current service in such capacity as provided in the applicable articles of organization, operating agreements, partnership agreements, or bylaws, by statutory law or by written agreement, policies or procedures of or with the Debtors, shall be deemed to be and treated as executory contracts that are assumed by the Debtors and assigned to the Reorganized Debtors pursuant to the Plan and section 365 of the Bankruptcy Code and shall not be affected by or discharged by this Plan.  Nothing in the Plan shall be deemed to affect any rights of any director or officer or any other person against any insurer with respect to any directors or officers liability insurance policies.

**9.5**     ***Term of Certain Injunctions***.  Unless otherwise provided herein or in the Confirmation Order, all of the injunctions and/or stays provided for in, or in connection with, the Chapter 11 cases, whether pursuant to Section 105, Section 362, or any other provision of the Bankruptcy Code or other applicable law, in existence on the Confirmation Date, shall remain in

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

full force and effect through the Effective Date and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms. In addition, on and after the Confirmation Date, the Debtors may seek such further orders as they may deem necessary or appropriate to preserve the *status quo* during the time between the Confirmation Date and the Effective Date.

**9.6** ***No Successor Liability.*** Except as otherwise specifically provided in the Plan or the Confirmation Order, neither the Debtors nor the Reorganized Debtors will have any responsibilities, pursuant to the Plan or otherwise, for any liabilities or obligations of the Debtors or any of the Debtors' past or present subsidiaries relating to or arising out of the operations of or assets of the Debtors or any of the Debtors' past or present subsidiaries, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date. The Reorganized Debtors shall have no successor or transferee liability of any kind or character, for any Claims; *provided, however*, that the Reorganized Debtors shall have the obligations for the payments specifically and expressly provided, and solely in the manner stated, in the Plan.

**9.7** ***Preservation of All Causes of Action Not Expressly Settled or Released.***

For the avoidance of doubt, and without limiting or restricting any other provisions of this Plan, including but not limited to Section 9.1 "Vesting of Assets and Retained Causes of Action," unless a claim or Cause of Action against a Creditor, Person, or other entity is expressly and specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, the Reorganized Debtors expressly reserve such claim or Cause of Action for adjudication or pursuit by the Reorganized Debtors after the Effective Date, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan, the Confirmation Order or otherwise.

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

The Reorganized Debtors expressly reserve the right to pursue or adopt any claims (and any defenses) or Causes of Action of the Debtors or the Debtors in Possession, as trustees for or on behalf of the Creditors, not specifically and expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order against any entity, including, without limitation, the plaintiffs or codefendants in any lawsuits. The Reorganized Debtors specifically and expressly reserve any and all rights with respect to the XTO Matter and the JTM Claim. The Reorganized Debtors shall be representatives of the Estates appointed for the purposes of pursuing any and all such claims and Causes of Action under 11 U.S.C. § 1123(b)(3)(B).

Any entity or Person to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors, should assume that such obligation, transfer, or transaction may be reviewed by the Reorganized Debtors subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, be the subject of an action or claim or demand after the Effective Date, whether or not (a) such entity or Person has filed a proof of claim against the Debtors in the Chapter 11 cases, (b) such entity or Person's proof of claim has been objected to, (c) such entity or Person's Claim was included in the Debtors' Schedules, or (d) such entity or Person's Scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as disputed, contingent, or unliquidated.

## ARTICLE 10

## THE EFFECTIVE DATE OF THE PLAN

**10.1** *Conditions to Occurrence of Effective Date of Plan.* The "Effective Date of the plan," as used in Section 1129 of the Bankruptcy Code, shall not occur until the following

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

conditions shall have been satisfied (or shall be satisfied contemporaneously with or immediately upon the occurrence of the Effective Date) or waived by the Debtors:

10.1.1 The Confirmation Order shall have become a Final Order; *provided, however,* that the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order at the option of the Debtors, unless the effectiveness of the Confirmation Order has been stayed or vacated.

10.1.2 The Confirmation Order shall be unstayed and shall have become a Final Order.

10.1.3 The Plan and all documents to implement this Plan and the transactions contemplated herein shall be in form and substance satisfactory to the Debtors.

10.1.4 All Professional charges due to or incurred by Professionals through the Effective Date not previously paid pursuant to interim and final orders shall have been paid into and shall be held in escrow, free and clear of liens, Claims and encumbrances of claimants and holders of Interests (other than the rights of Professionals), until due and payable in accordance with applicable Bankruptcy Court order.

10.1.5 All payments of Cash due under the Plan on the Effective Date shall have been made.

10.1. 6  The Exit Facility shall have been funded

**10.2**    ***Filing of Notice of Effective Date.***    Within two (2) Business Days of the occurrence of the Effective Date, the Reorganized Debtors shall file a notice of occurrence of the Effective Date signed by the counsel for the Debtors in Possession and, if different, counsel to the Reorganized Debtors, in the record of the Bankruptcy Court reflecting (a) that the foregoing conditions to the occurrence of the Effective Date have been satisfied or waived by the Debtors and any other person whose consent or waiver is required, (b) the date of the Effective Date, and (c) acknowledging that the Effective Date has occurred on and as of such date.

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

**10.3**    *Revocation of Confirmation Order or Withdrawal of Plan*.  The Debtors may revoke or withdraw the Plan subsequent to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter 11 cases prior to the Effective Date, in which case the Plan shall be deemed withdrawn and the Confirmation Order (if any has been entered) shall be automatically revoked without the need for any action by any party in interest or the Bankruptcy Court.  In such event, the Plan or modified Plan and the Confirmation Order shall be of no further force or effect and, the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of the Plan, and all the Debtors' respective obligations with respect to the Claims and Interests shall remain unchanged, all of the Debtors' rights and claims against all entities and Persons shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtors or any other Persons or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors or any other Persons.

## ARTICLE 11

## MISCELLANEOUS PROVISIONS

**11.1**    *Payment of Statutory Fees.*  All fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid after the Effective Date by the Reorganized Debtors, as, when, and in the amount as required by applicable law.

**11.2**    *Dissolution of the Unsecured Creditors Committee.*  On the Effective Date, the unsecured creditors committee, if one has been appointed, and its Professionals, shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to or arising from or in connection with the Chapter 11 cases, and the unsecured creditors committee shall be deemed dissolved.

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

**11.3** *Pension Plans.* For avoidance of doubt, on and after the Effective Date, pursuant to Section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within meaning of Section 1114 of the Bankruptcy Code), if any, at the level established in accordance with Section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which such Debtors had obligated themselves to provide such benefits.

**11.4** *Notice.* Any notices, requests, and demands required or permitted to be provided under this Plan, in order to be effective, must be in writing (including by electronic mail or facsimile transmission), and unless otherwise expressly provided herein, shall be deemed to have been duly given or made (a) if personally delivered or if delivered by electronic mail or courier service, when actually received by the entity to whom such notice is sent, or (b) if deposited with the United States Postal Service (whether actually received or not), at the close of business on the third Business Day following the day when placed in the mail, postage prepaid, certified or registered with return receipt requested, addressed to the appropriate entity or entities, at the address of such entity or entities set forth below (or at such other address as such entity may designate by written notice to all other entities listed below in accordance with this section:

If to the Debtors or Reorganized Debtors:

c/o Jay Krasoff
Chiron Equities, LLC
550 Westcott Street, Suite 235
Houston, Texas 77007
Email:_JKrasoff@chironfinance.com

Heller, Draper, Hayden, Patrick & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Attn: Douglas S. Draper, Esq.
Email: ddraper@hellerdraper.com

**11.5** **Treatment of Unclassified Claims**

### 11.5.1  Administrative Claims (exclusive of claims of Professionals)

Subject to the bar date provisions of the Plan, the Debtors shall pay each holder of an Allowed Administrative Claim against the Debtors on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount of the Allowed Administrative Claim the later of thirty (30) days after the Effective Date or the date such claim is Allowed (if applicable).

On or before the Effective Date, the Debtors shall pay all fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, in Cash in full.

Except as provided below for Professionals and non-tax liabilities incurred in the ordinary course of business by the Debtors in Possession, requests for payment of Administrative Claims must be Filed no later than sixty (60) days after the Effective Date.

Holders of Administrative Claims based on liabilities incurred in the ordinary course of business of the Debtors in Possession prior to the Effective Date (other than professionals or other entities described in subparagraph (ii) above, and governmental units that hold claims for taxes or claims and/or penalties related to such taxes) shall not be required to File any request for payment of such claims.  Such Administrative Claims shall be assumed and paid by the Reorganized Debtors in the ordinary course of business under the terms and conditions of the particular transaction giving rise to such Administrative Claim, without any further action by the holders of such claims.

Holders of Allowed Administrative Claims shall be entitled to interest on their Administrative Claims to the extent allowable, except holders of Professional Fee Claims.

Presidential shall not be required to file a claim for the DIP Facility or for any interest, costs, or fees authorized under the DIP Facility or DIP Order pursuant to 11 U.S.C. § 506 or otherwise, except Presidential shall serve the attorney fee notices required by the DIP Order.

### 11.5.2  Professional Fee Claims

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

Professionals and holders of Professional Fee Claims shall file final applications for allowance of compensation for services and reimbursement of expenses incurred from the Petition Date through the Effective Date within sixty (60) days of the Effective Date. Such Claims shall be paid in full (i) on the date such Claim becomes Allowed, or as soon thereafter as is practicable, or (ii) when mutually agreed upon by such Professional or holder of a Professional Fee Claim and the Reorganized Debtors.

### 11.5.3    Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall receive one of the following three treatments, as determined by the Reorganized Debtors in its sole and absolute discretion, on account of and in full satisfaction of such Allowed Priority Tax Claim: (a) Cash on the Effective Date, or on such other date on which such Priority Tax Claim becomes an Allowed Claim, in an amount equal to the amount of the Allowed Priority Tax Claim; (b) in thirty-six (36) payments with the monthly payment calculated with same amortization schedule of the payments to the Class 16 Creditors, with interest calculated in accordance with Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code; or c) a treatment specifically set forth in this section. The Allowed Priority Tax Claims shall only include interest incurred through the Petition Date and shall exclude penalties or late charges unless allowed by applicable law or agreement between the parties.

Notwithstanding any other provision in the Plan, any modification of the Plan or any provision in the Confirmation Order, Navarro County, Wise County and Wise CAD (the " NW Tax Authorities") shall receive the following treatment:  the NW Tax Authorities are the holders of prepetition Claims for ad valorem property taxes for tax years prior to tax year 2011 and holders of Administrative Claims for year 2011 ad valorem property taxes.  The NW Tax Authorities shall receive payment of the entire amount of their prepetition Claims, including all penalties and interest that accrued as of the Petition Date, plus interest that has accrued at the

**Deleted:** two

**Deleted:** or

**Deleted:** initial payments to the IRS and the State of Texas Sales Tax shall be applied to amounts that were incurred by Congress Materials until paid in full and thereafter shall be applied to any Priority Tax Claims assumed by Congress Materials when it merged with Green Aggregates, Inc. The

**Deleted:** {00315484-3}

**Formatted:** Do not check spelling or grammar

state statutory rate of 1% per month pursuant to 11 U.S.C. Sections 506(b) and 511, in Cash on the Effective Date.  In the event of payment after the Effective Date, such payment shall also include interest that has accrued from the Effective Date through payment in full at the state statutory rate of 12% per annum pursuant to 11 U.S.C. Sections 511 and 1129.  The Tax Authorities shall retain all liens that secure all amounts owed for their prepetition Claims (including prepetition penalties and interest) as well as the postpetition taxes including any penalties, interest and attorneys' fees that may accrue on year 2011 ad valorem property taxes. The NW Tax Authorities shall also retain the senior statutory priority of their liens that **secure** their prepetition and postpetition Claims.  Pursuant to 11 U.S.C. Section 503(b)(1)(D) the Tax Authorities are not required to file an administrative expense proof of Claim as a condition of allowance or payment of their Administrative Claims.  The NW Tax Authorities shall receive payment of their Administrative Claims for year 2011 ad valorem property taxes prior to the state law delinquency date.   The NW Tax Authorities' Administrative Claims are not discharged unless paid in full.  In the event of a default under the Plan, counsel for the NW Tax Authorities shall notify counsel for the Debtors/Reorganized Debtors via facsimile or email.  If the Debtors/Reorganized Debtors fail to cure the default within twenty (20) days after transmission of the notice of default, the NW Tax Authorities may proceed to collect all amounts owed pursuant to state law outside the Bankruptcy Court.  The Debtors/Reorganized Debtors shall be entitled to only two notices of default.  In the event of a third default, the NW Tax Authorities shall be entitled to pursue collection of all amounts owed pursuant to state law outside the Bankruptcy Court without further notice.  Failure to pay postpetition ad valorem property taxes prior to the state law delinquency date is an event of default.  Sections 6.3 and 6.6 of the Plan do not apply to the NW Tax Authorities.

The Allowed Priority Tax Claim of the Texas Controller of Public Accounts and the Texas Workforce Commission (collectively " Controller")  shall receive monthly payments of

interest and principal on such claimant Allowed Priority Tax Claim based upon 1) an interest rate of 4.25% per annum and 2) an amortization schedule of eight years, 3) a term of four years, amd 4) a balloon payment at the end of the four year period..  The default provisions applicable to the IRS as set forth below shall be applicable to the Allowed Priority Tax Claim of the Controller. Payments will begin no later than thirty (30) days after the Effective Date. The default provisions applicable to the IRS as set forth below shall be applicable to the Allowed Priority Tax Claim of the Controller, except that Texas state law will be applicable in place of the federal tax code.

### 11.6   IRS Payment and Default Provisions

The Allowed Priority Tax Claim of the Internal Revenue Service ( " IRS")  shall receive monthly payments of interest and principal on such claimant Allowed Priority Tax Claim based upon 1) the interest rate mandated by 11 USC 511  2) an amortization schedule of eight years, and 3) a term of four years. Payments will begin no later than thirty (30) days after the Effective Date.

The IRS's claim, upon a default under the plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:

(A)     If the Debtors or the successor in interest fail to make any plan payment, or deposits of any currently accruing employment or sales tax liability; or fail to make payment of any tax to the IRS within 10 days of the due date of such deposit or payment, or if the Debtors or the successor in interest fail to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtors are in default of the plan.  Failure

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtors are in default.

(B)    If the United States declares the Debtors or the successor in interest to be in default of the Debtors' obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Debtors or the successor in interest.

(C)    If full payment is not made within 14 days of such demand, then the IRS may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code.  The IRS shall only be required to send two notices of default, and upon the third event of Default the IRS may proceed to collect on all amounts owed without records to the Bankruptcy Court and without further notice to the Debtors.  The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.  All payments will be sent to: /IRS, 1100 Commerce Street, Mail Code **5024** DAL, Dallas, Texas 75242 attn Leo Carey.

(D)    The IRS shall not be bound by any release or injunction provisions in the Plan (including but not limited to 11.17) that would release or enjoin  any liability of the responsible persons of the Debtors to the IRS.  The IRS may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtors to the IRS; but the IRS shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.

**11.7**    *Headings*.  The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

**11.8**    *Governing Law*.    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

**11.9**    *Additional Documents*.    The Debtors or Reorganized Debtors have the authority to take any and all actions and execute (and perform) any agreements and documents as the Debtors or Reorganized Debtors deem necessary or appropriate in their reasonable discretion to effectuate and further evidence the terms and conditions of this Plan.

**11.10**    *Compliance with Tax Requirements*.    In connection with this Plan, the Debtors and the Reorganized Debtors will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all Distributions hereunder shall be subject to such withholding and reporting requirements.

**11.11**    *Exemption from Transfer Taxes*.    Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any securities under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall be exempt from all taxes as provided in Section 1146(a) of the Bankruptcy Code.

**11.12**    *Further Authorizations*.    The Debtors, and after the Effective Date, the Reorganized Debtors, may seek such orders, judgments, injunctions, and rulings they deem necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

**11.13** *Successors and Assigns.* The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such entity.

**11.14** *Modification and Amendment of the Plan.* Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019, this Plan may be amended or modified by the Debtors, and, after the Effective Date, by the Reorganized Debtors.

**11.15** *Right of Debtors to Prepay Installments.* Notwithstanding any other provision contained herein, the Debtors shall have the right to prepay any installment due under this Plan to any Creditor or taxing authority without any penalties or adverse effects.

**11.16** *Guarantor Liability.* Nothing in this Plan shall be construed so as to alter the liability or liabilities of any guarantor of a Claim, or altering the rights of a holder of a Claim against such guarantor.

**11.17** *Injunctions.*

(a) Except as otherwise provided in the Plan or the Confirmation Order, and in addition to the injunction provided under sections 524(a) and 1141 of the Bankruptcy Code on and after the Effective Date, all Persons who have held, currently hold or may hold a debt, Claim or Interest are permanently enjoined from taking any of the following actions on account of any such discharge of debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtors, or the Reorganized Debtors; (2) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtors, or the Reorganized Debtors; (3) creating, perfecting, or enforcing any lien or encumbrance against the Debtors, or the Reorganized Debtors; (4) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtors, or the Reorganized Debtors, except as allowed by 11 U.S.C. § 553; and (5) commencing or continuing

Deleted: 12

Deleted: 13

Deleted: 14 .

Deleted: 15 .

Deleted: 16

Deleted: )

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. This injunction does not apply to the right of a holder of a Claim to recover equipment or property against which the automatic stay has been lifted by order of the Court in the above-captioned bankruptcy cases or where the Debtors or Reorganized Debtors have defaulted in making the payments due under the Plan to such creditor.. Any Person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.

(b)     In order to effectuate the Plan, no action may be taken by a holder of a Claim against the Debtors, against a non-Debtor co-borrower, co-maker, co-obligor, or guarantor of such Claim if the co-borrower, co-maker, co-obligor, or guarantor is also a manager of the Reorganized Debtors, up to and through thirty (30) days after the third anniversary of the Effective Date of the Plan unless the Debtors or Reorganized Debtors are in default of any payments due such creditor under: (i) the loan documents executed by and between the Debtors or Reorganized Debtors and such creditor as  modified by this Plan; or (ii) any adequate protection order entered between the Debtors and such creditor prior to the Effective Date of the Plan, carried forward pursuant to this Plan. The managers of the Reorganized Debtors are essential to the operation of the Debtors and will be essential to the operation of the Reorganized Debtors, therefore a third-party action against such non-Debtor co-borrowers, co-makers, co-obligors, or guarantors would have an adverse impact on the Debtors' ability to accomplish reorganization. However, this provision shall not apply to Presidential, the Exit Facility or contract any express provision in this Plan with respect to claims against co-borrowers, co-makers, co-obligors or guarantors. The sole managers of the Reorganized Debtors are Jay Krasoff and Chiron Equities, LLC.

Deleted: , member, or officer

Deleted: Debtors or

Deleted: fifth

Deleted: , provided however, that the Bankruptcy Court shall retain jurisdiction upon reopening of these Chapter 11 Cases to modify or terminate the stay in the event of a material default by the Reorganized Debtors in the performance of obligations under the Plan.

Deleted: , members, and officers

Deleted: in no way

Deleted:  or

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

(c)　　For the avoidance of doubt, in the event the Reorganized Debtors fail to make any payment due to a creditor, such creditor may exercise all rights and remedies available to it under the loan documents executed by Debtors or Reorganized Debtors and applicable law against Reorganized Debtors and/or any non-Debtor, co-borrower, co-maker, co-obligor, or guarantor of such Claim without further notice or order of the Court.

**11.18　*Adequate Protection Orders***

All adequate protection orders entered in these Chapter 11 cases shall remain in full force and effect until the Effective Date of the Plan.

# ARTICLE 12

# RETENTION OF JURISDICTION

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have jurisdiction to the fullest extent provided by applicable law over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 cases or this Plan, including, without limitation, the following:

**12.1　*Executory Contracts and Unexpired Leases.*** To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtors are parties or with respect to which the Debtors may be liable, (ii) to review and determine all Cure Payments under any such assumed executory contract or unexpired lease, and (iii) to review and determine any Claims resulting from the rejection of any executory contract or unexpired lease.

**12.2　*Causes of Action.*** To determine any and all Causes of Action, including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Reorganized Debtors after the Effective Date.

**12.3** *Disputed Claims, Contingent Claims and Unliquidated Claims Allowance/Disallowance.* To hear and determine any objections to the allowance of Claims or Interests (other than Claims that are Allowed pursuant to the Plan), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, contingent Interest, Disputed Interest in whole or in part, and to determine any and all disputes among Creditors and holders of Interests with respect to their Claims and Interests.

**12.4** *Enforcement/Modification of Plan.*

12.4.1 To hear and determine any requests to modify this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

12.4.2 To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

12.4.3 To hear and determine such other matters that may be set forth in the Plan and the Confirmation Order or that relate to any transaction required or contemplated by the Plan.

12.4.4 To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all orders entered by the Bankruptcy Court in the Chapter 11 cases.

12.4.5 To hear and determine any issue relating to Distributions under the Plan.

12.4.6 To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under Section 105 of the Bankruptcy Code.

12.4.7 To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by Section 1142 of the Bankruptcy Code.

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar

**12.5  *Compensation of Professionals*.**  To hear and determine all applications for allowances of compensation and reimbursement of expenses of Professionals, any other fees and expenses authorized to be paid or reimbursed under this Plan, and to approve the reasonableness of any payments made or to be made as provided in Section 1129(a)(4) of the Bankruptcy Code.

**12.6  *Settlements*.**  To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or Cause of Action by the Debtors or the Reorganized Debtors.

**12.7  *Taxes*.**  To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtors or Debtors in Possession may be liable, directly or indirectly, in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code.

**12.8  *506(b) Claims*.**  To determine the amounts, if any, of the reasonable fees, costs and other charges payable under Section 506(b) of the Bankruptcy Code.

**12.9  *Specific Purposes*.**  To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

**12.10  *Final Decrees.***  To enter an order or final decree closing the Chapter 11 cases.

Dated:  June____, 2011

Deleted: May 11

**PLAN FILED BY:**

Congress Sand & Gravel, LLC

/s/Jay Krasoff_____
By:  Jay H. Krasoff

Congress Materials, LLC

/s/Jay Krasoff_____
  By:  Jay H. Krasoff

Deleted: {00315484-3}

Formatted: Do not check spelling or grammar